(No. 63084.—
(No. 63116.—

THE COUNTY OF KANE v. JAN CARLSON, Circuit Clerk, *et al.*—HARRIS AGNEW, Plaintiff, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Defendants.

*Opinion filed February 20, 1987.*

188

192

Robert J. Morrow, State's Attorney, David R. Akeman, Assistant State's Attorney, and William F. Barrett, all of Geneva, for the County of Kane.

Clancy, McGuirk & Hulce, P.C., of St. Charles (Wendell W. Clancy and John J. Hoscheit, of counsel), for Jan Carlson.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Robert W. Cushing and Michael V. Casey, Assistant Attorneys General, all of Chicago, of counsel), for the Illinois State Labor Relations Board.

Gilbert A. Cornfield and Gail E. Mrozowski, of Cornfield & Feldman, of Chicago, for the American Federation of State, County and Municipal Employees.

Lee J. Schwartz, Special Assistant Attorney General, of Chicago (Robert J. Burson and Julie O'D. Allen, of Sidley & Austin, of counsel), for Judge Marvin D. Dunn.

Lee J. Schwartz, Special Assistant Attorney General, of Chicago (Robert J. Burson and Julie O'D. Allen, of Sidley & Austin, of counsel), for the plaintiff.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Robert W. Cushing and Michael V. Casey, Assistant Attorneys General, all of Chicago, of counsel), for defendant Illinois State Labor Relations Board.

Gilbert Feldman and Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for defendant American Federation of State, County and Municipal Employees.

JUSTICE MILLER delivered the opinion of the court:

At issue in these consolidated actions is whether certain nonsupervisory employees of the judicial branch of State government are included in the scope of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1601 through 1627) (the Act).

In cause No. 63084, the American Federation of State, County, and Municipal Employees (AFSCME) petitioned the Illinois State Labor Relations Board (State Board) to conduct a representation election among the nonsupervisory employees in the office of the Kane County circuit clerk. AFSCME sought to represent the deputy circuit clerks in collective bargaining, and the State Board found that AFSCME had shown the necessary level of interest among affected employees that is required for formal election proceedings. On January 18, 1985, the County of Kane filed a complaint for a declaratory judgment and an injunction, seeking to prevent the State Board from proceeding on AFSCME's representation petition. The complaint sought a declaration that the deputy circuit clerks were not employees under the Act, that the Act was unconstitutional on its face and as applied to the county, and that the county was the sole employer of the deputy clerks. Named as defendants in the county's complaint were Jan Carlson, circuit clerk of Kane County, John A. Krause, then chief judge of the Sixteenth Judicial Circuit, the State Board, AFSCME Council 31, and various union officers. In an order entered February 14, 1985, the circuit court permanently enjoined the State Board from proceeding on the matter.

The court found that the deputy circuit clerks were not within the scope of the Act and therefore the State Board had no jurisdiction over the representation petition.

The appellate court reversed, with one justice dissenting. (140 Ill. App. 3d 814.) The court believed that the county, the chief judge, and the circuit clerk were all within the scope of the Act, though the court did not determine which of those three entities employed the deputy clerks. The court held that the State Board had jurisdiction over the matter and that the bargaining duty imposed by the Act on public employers did not, on its face, violate the constitutional requirement of separation of powers. The appellate panel certified the case for review by this court as presenting issues of substantial importance (see 87 Ill. 2d R. 316).

Similar questions regarding the scope of the Act are presented in cause No. 63116. There we allowed the petition of Harris Agnew, chief judge of the Seventeenth Judicial Circuit, for leave to file a complaint for a writ of *mandamus* or prohibition (see 87 Ill. 2d R. 381). The petition names the State Board and AFSCME Council 31 as respondents, and Chief Judge Agnew seeks to bar the State Board from proceeding further on certain complaints for unfair labor practices filed against him.

Two of the charges against the chief judge have been heard by a hearing officer. One of them concerned the chief judge's refusal to sign a collective-bargaining agreement. In that case the hearing officer found that employees of the chief judge had taken part in a representation election along with employees of the circuit clerk and employees of Winnebago County, one of the counties included in the Seventeenth Circuit; AFSCME was certified as the employees' representative following the election. The hearing officer found that the chief judge was represented in negotiations with the union but

later refused to sign a collective-bargaining agreement. The hearing officer concluded that the State Board had jurisdiction over the employees of the chief judge and therefore recommended that the chief judge be ordered to sign the agreement. The hearing officer also heard evidence regarding another charge of an unfair labor practice; this involved Kerry Knodle, a juvenile probation officer employed in the Winnebago County Department of Court Services. Knodle alleged some five instances in which his supervisors had interfered with his rights under the Act, and the hearing officer found evidence supporting some of the charges and recommended the posting of a cease-and-desist order in the workplace. In his petition for a writ of *mandamus* the chief judge contends that he is not an employer within the scope of the Act. The chief judge therefore asks that the State Board be barred from proceeding any further on these and other pending charges of unfair labor practices filed against him.

I

The Act provides a comprehensive system of collective bargaining for those public employees and employers who fall within its scope. Responsibility for administering the Act is placed in two labor boards: a local board, having jurisdiction over collective-bargaining matters involving "units of local government with a population in excess of 1 million persons," and a State board, having jurisdiction over collective-bargaining matters involving other public employers covered by the Act. (See Ill. Rev. Stat. 1985, ch. 48, pars. 1605(a), (b).) The boards are to determine appropriate bargaining units and conduct representation elections, and to investigate, hear, and determine charges of unfair labor practices. Ill. Rev. Stat. 1985, ch. 48, pars. 1609, 1611.

Once an exclusive bargaining representative is certified for a particular group of employees (see Ill. Rev. Stat. 1985, ch. 48, par. 1609), the employer has the duty to bargain collectively with the employees' representative. This requires that the parties meet and "negotiate in good faith with respect to wages, hours, and other conditions of employment, not excluded by Section 4 of this Act." (Ill. Rev. Stat. 1985, ch. 48, par. 1607.) Excepted from the group of mandatory subjects of bargaining are "matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees, examination techniques and direction of employees." (Ill. Rev. Stat. 1985, ch. 48, par. 1604.) Unless the parties agree otherwise, the collective-bargaining agreement negotiated by them must contain "a grievance resolution procedure *** providing for final and binding arbitration of disputes concerning the administration or interpretation of the agreement." Ill. Rev. Stat. 1985, ch. 48, par. 1608.

To protect the statutory rights of employers and employees, the Act prohibits certain unfair labor practices and provides procedures for their resolution. (See Ill. Rev. Stat. 1985, ch. 48, pars. 1610, 1611.) An employer may not interfere with rights granted to employees by the Act or discriminate against or discharge an employee because of union membership or other protected activity; moreover, an employer may not refuse to bargain collectively with the exclusive representative of an employee group or violate an order of the board concerning a representation election. (See Ill. Rev. Stat. 1985, ch. 48, par. 1610(a).) Unfair labor practices by labor organizations and their agents are defined to prohibit similar activity. (See Ill. Rev. Stat. 1985, ch. 48, par. 1611(b).) Charges of unfair labor practices are to be filed with the

appropriate board, which may then conduct an investigation, hear evidence, and grant relief. Review of the decision lies in the appellate court (see Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)), and the boards themselves may institute proceedings in circuit court to enforce their orders (see Ill. Rev. Stat. 1985, ch. 48, pars. 1611(f), (g)).

Strikes by fire fighters, peace officers, and certain security employees and paramedics are prohibited by the Act (see Ill. Rev. Stat. 1985, ch. 48, par. 1617(a)), and in other cases strikes constituting "a clear and present danger to the health and safety of the public" may be enjoined (Ill. Rev. Stat. 1985, ch. 48, par. 1618(a)). With respect to employees who are statutorily forbidden to strike or who have been enjoined from striking, the Act provides a system that has been termed "compulsory advisory arbitration" for resolving impasses in the negotiation of their collective-bargaining agreements. (Jenkins, *Collective Bargaining for Public Employees: An Overview of Illinois' New Act*, 1983 S. Ill. U.L.J. 483, 500 n.168.) This process begins with mediation and continues through arbitration. At the final stage, the decision of the arbitration panel must be submitted, for acceptance or rejection, to what is termed the "governing body" (see Ill. Rev. Stat. 1985, ch. 48, par. 1603(h)) of the particular public employer involved in the negotiations. If a decision or issue is rejected, it is returned to the arbitration panel for further proceedings. At that point, the public employer becomes liable for the costs of any supplemental proceedings, including the attorney fees of the employees' representative. Ill. Rev. Stat. 1985, ch. 48, par. 1614(*o*).

II

In the two actions consolidated here the parties raise a number of common issues regarding the constitutionality of the Act and the jurisdiction of the State Board.

The Kane County case, cause No. 63084, originated as an action for declaratory and injunctive relief brought by the county against the circuit clerk, the chief judge of the Sixteenth Judicial Circuit, the State Board, and AFSCME. The county sought to enjoin the State Board from taking any further action on the union's petition for recognition as the exclusive bargaining agent of nonsupervisory employees of the circuit clerk's office, all of whom had been deputized. The other case, cause No. 63116, is a complaint for a writ of *mandamus* or prohibition sought by Harris Agnew, the chief judge of the Seventeenth Judicial Circuit. Charges of unfair labor practices have been filed against the chief judge, and he asks that the State Board be barred from proceeding further on those matters. The charges in that case grow out of the union's efforts to represent certain employees in the local court services department, which consists primarily of probation officers.

Kane County commenced its action for declaratory and injunctive relief while the union's recognition petition was pending before the State Board, and as a preliminary matter the State Board argues that the county should first have exhausted its administrative remedies. There are exceptions to the exhaustion requirement, however. The rule does not apply when a party challenges the constitutionality of a statute on its face (*Phillips v. Graham* (1981), 86 Ill. 2d 274, 289; *Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 86-87) or contests the authority or jurisdiction of the administrative agency (*Landfill, Inc. v. Pollution Control Board* (1979), 74 Ill. 2d 541, 550-51; *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, 487), and those issues were raised by the county in its complaint. Moreover, the questions presented are entirely legal and do not require fact finding by the administrative agency or an application of its particular expertise.

Here, then, the parties were not required to exhaust their administrative remedies before bringing their respective actions.

In the Kane County case, the trial court found that the county was not the employer of the deputy clerks; the court also found that neither the circuit clerk nor the chief judge was within the scope of the Act, and therefore it was unnecessary to determine which of those two was the employer of the deputies. The court permanently enjoined the State Board from proceeding on the union's recognition petition. The appellate court reversed that judgment, holding that both the chief judge and the circuit clerk were within the scope of the Act. The court believed that the State Board should determine who employed the deputies and noted that the county, as a unit of local government, was also an entity included in the scope of the Act.

The circuit clerk is a nonjudicial officer of the judicial branch of government (Ill. Const. 1970, art. VI, sec. 18(b); *Drury v. County of McLean* (1982), 89 Ill. 2d 417; *Kotche v. County Board* (1980), 87 Ill. App. 3d 1127), and the county now concedes that it is not the employer of the deputy clerks. The chief judge and the circuit clerk each asserts that he is the employer of the deputies. For the purposes of the Act, we believe that the circuit clerk, and not the chief judge, should be deemed to be the employer of the deputy clerks. By statute the circuit clerk is authorized to hire deputy clerks, and he is responsible for their acts. (Ill. Rev. Stat. 1985, ch. 25, pars. 9, 10.) To be sure, the clerk's office is subject to the control of the circuit court in several important respects. Thus, the office must be open on days determined by the court, the circuit clerk must perform pertinent functions as assigned by the court, and the court is authorized to make annual inspections of the clerk's office. (See Ill. Rev. Stat. 1985, ch. 25, pars. 6, 13, 22.)

That the clerk and his office are subject in these ways to the general control of the circuit court does not, in our view, make the chief judge an employer of the clerk's deputies.

The county and the chief judge—but not the circuit clerk—also contest the jurisdiction of the State Board and the validity of the Act. Neither the county nor the chief judge is an employer of the deputies, however, and therefore neither one would be aggrieved by applying the Act to the deputies. For that reason, then, the county and the chief judge do not have standing in this case to contest the Act. (See *McKenzie v. Johnson* (1983), 98 Ill. 2d 87; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563.) We note, though, that essentially the same questions are raised in the consolidated case.

In cause No. 63116, Chief Judge Agnew argues that chief judges, who are the employers of probation officers, are not within the scope of the Act. Chief Judge Agnew also argues that application of the Act to judicial employees would violate the separation of powers principle and would trench on the general administrative and supervisory authority vested by the Constitution in the judicial branch. He also raises several general objections to the constitutionality of the Act.

Probation officers are appointed by the chief judge of each judicial circuit (Ill. Rev. Stat. 1985, ch. 38, par. 204—7(2)(b)), and the probation department of each county or group of counties within a circuit is under the authority of the chief judge (Ill. Rev. Stat. 1985, ch. 38, par. 204—7(2)(a)). It is apparent, then, that the probation officers may be considered employees of the chief judge. Chief Judge Agnew first argues that he is not a public employer as that term is defined under the Act. Section 3(o), defining "public employer," provides:

" 'Public employer' or 'employer' means the State of Illinois; any political subdivision of the State, unit of local government or school district; authorities including departments, divisions, bureaus, boards, commissions or other agencies of the foregoing entities; and any person acting within the scope of his or her authority, express or implied, on behalf of such entities in dealing with its employees." Ill. Rev. Stat. 1985, ch. 48, par. 1603(o).

Among the entities included in the definition are the State of Illinois and persons acting on its behalf with respect to employment matters. These terms are sufficiently broad, we believe, to include the chief judge in his capacity as an employer of the probation officers. The judicial system is one of the three branches of State government, and there is no intent expressed in the Act to exclude the judiciary from its scope.

In contending that the judicial branch was not meant to be covered by the Act, the chief judge refers to the provision defining governing body, which for the State consists of the State Board and the directors of two departments of the executive branch (see Ill. Rev. Stat. 1985, ch. 48, par. 1603(h)). Under the special impasse arbitration system contained in the Act, the panel's decision is submitted to the employer's governing body for acceptance or rejection. The chief judge believes that this requirement is anomalous if applied to the court system. There is no direct expression, however, of an intent to exclude the judicial branch from the Act. The breadth of the Act's coverage is established in its definition of "public employer," and we do not believe that we may disregard the plain meaning of the term "State of Illinois."

Chief Judge Agnew makes the additional argument that probation officers may be considered to be non-State peace officers and therefore were excluded from the Act's coverage by an exception for that group con-

tained in an earlier definition of the term "public employee." (See Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1603(m).) He acknowledges that the provision was amended effective January 1, 1986, so that it no longer contained that exclusion, but he contends that because the charges at issue here arose before that time, the later amendment is irrelevant. The chief judge would find that that probation officers are peace officers by virtue of their statutory authority to arrest probationers. (See Ill. Rev. Stat. 1983, ch. 38, par. 204—3; Ill. Rev. Stat., 1984 Supp., ch. 38, par. 204—8(12).) We have already determined, however, that probation officers, as employees of the judicial branch of State government, may be considered State employees in the context of the Act, and under the chief judge's theory they therefore would be State rather than non-State peace officers.

That probation officers are in this context employees of the State answers another contention made here. Two boards were created by the Act: a State Board, with jurisdiction over employment matters involving the State of Illinois, units of local government with populations not in excess of one million persons, and the Regional Transportation Authority, and a Local Board, with jurisdiction over employment matters involving units of local government with populations in excess of one million persons. (Ill. Rev. Stat. 1985, ch. 48, pars. 1605(a), (b).) The chief judge contends that he is not among the entities over which the two labor boards have jurisdiction. He mentions also that the jurisdictional lists do not correspond completely to the definition of public employer, which is expressed in greater detail, and he concludes that not every public employer is necessarily included within the jurisdiction of the labor boards.

We have determined, however, that probation officers may be considered State employees, and as an employment matter involving the State the case here comes

within the State Board's jurisdiction. Moreover, we believe that the jurisdiction of the two boards is as extensive as the coverage of the Act. There was no need for the provisions describing the jurisdiction of the two boards to parrot the definition of "public employer"; the generic references to the two levels of government, State and local, and the further division among local units on the basis of population were sufficiently broad to capture the various entities subject to the Act. For these reasons, then, we conclude that the chief judge is within the State Board's grant of jurisdiction.

### III

Chief Judge Agnew also raises a number of constitutional objections to applying the Act to the judicial branch. To do so, he believes, would violate the separation of powers principle of the State Constitution and invade the general administrative and supervisory powers vested by the Constitution in the judicial branch. The chief judge fears that the various provisions contained in the Act would subject the administration of the judicial branch to an executive agency in vital matters affecting court personnel. He objects to imposing on the judicial branch a duty of collective bargaining, and he notes that persons representing the courts in these matters could be subject to charges of unfair labor practices. Moreover, he mentions that the special arbitration provisions, applicable if a threatened strike by judicial employees were enjoined, would require that the arbitration panel's decision be submitted to representatives of the executive branch for their acceptance or rejection.

In his assertion of judicial control over matters pertaining to court personnel, Chief Judge Agnew would find support for his views in *Witter v. County Commissioners* (1912), 256 Ill. 616. In that case the court held that a county board did not have the authority to fire a

probation officer. The court said, "Like attorneys, masters in chancery, receivers, commissioners, referees, and other similar officers, probation officers are mere assistants of the court in the performance of judicial functions. The power to appoint and remove such officers is necessary to the independent exercise of judicial power and the separation of the judicial department from the other departments of the government which are prohibited from exercising its functions." (*Witter v. County Commissioners* (1912), 256 Ill. 616, 624.) The court invalidated a statute authorizing a county board of a county having more than 500,000 in population to provide for the appointment of probation officers in the same manner as county employees. *Witter* was distinguished several years later in *People ex rel. Vanderburg v. Brady* (1916), 275 Ill. 261, which held that the legislature could extend civil service requirements to employees of the supreme court clerk's office and require that they be chosen from the list of eligible candidates; the court distinguished the clerk's employees from the "judicial assistants" involved in *Witter*.

*Witter* and *Vanderburg* are different from the present case, for those decisions concerned hiring and firing, matters that are not involved here. Under the Act the mandatory subjects of collective bargaining are limited to "wages, hours, and other conditions of employment." (Ill. Rev. Stat. 1985, ch. 48, par. 1607). Excluded from that requirement are "matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees, examination techniques and direction of employees." Ill. Rev. Stat. 1985, ch. 48, par. 1604.

We do not believe that the provisions of the Act are an unconstitutional intrusion on judicial authority. The

State Constitution makes separate grants of the legislative, executive, and judicial powers to those respective branches of State government (see Ill. Const. 1970, art. IV, sec. 1; art. V, secs. 1, 8; art. VI, sec. 1), and a separation of governmental powers is implicit in that scheme. Moreover, the principle finds direct expression in article II, section 1, of the Constitution, which provides, "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, sec. 1.) A tripartite separation of governmental power serves as an important guarantee of liberty, but it does not require, nor could it realistically demand, complete independence among the branches of government. Discussing the separation of powers effected by the State's first constitution, that of 1818, the court in *Field v. People ex rel. McClernand* (1839), 3 Ill. (2 Scam.) 79, 83-84, explained:

"This is a declaration of a fundamental principle; and, although one of vital importance, it is to be understood in a limited and qualified sense. It does not mean that the legislative, executive, and judicial power should be kept so entirely separate and distinct as to have no connection or dependence, the one upon the other; but its true meaning, both in theory and practice, is, that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many."

"*Field* has had a continuing vitality" (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 174), and its principles have continued to guide the interpretation of successive constitutional texts. (See, *e.g.*, *Knuepfer v. Fawell* (1983), 96 Ill. 2d 284, 292; *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, 122-23; *In re Estate of Barker* (1976), 63 Ill. 2d 113, 119; *Hill v. Relyea* (1966), 34 Ill. 2d 552, 557; *People v. Reiner* (1955), 6 Ill. 2d 337, 342-43.) We do not believe that application

of the Act to the judicial branch implicates the concerns expressed in *Field*.

As we have noted, the State Constitution vests the judicial power in a system of courts (see Ill. Const. 1970, art. VI, sec. 1), and included within this grant "are all powers necessary for complete performance of the judicial function" (*People ex rel. Illinois State Bar Association v. Peoples Stock Yards State Bank* (1931), 344 Ill. 462, 470). Moreover, the judicial article of the Constitution reserves to this court and to the chief circuit judges powers of administration and supervision over the judicial branch. Section 16 of article VI (Ill. Const. 1970, art. VI, sec. 16) provides, "General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." Section 7(c) of article VI (Ill. Const. 1970, art. VI, sec. 7(c)) provides, "Subject to the authority of the Supreme Court, the Chief Judge shall have general administrative authority over his court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court." Chief Judge Agnew would derive from these provisions an exclusive power inhering in the judiciary over matters affecting court personnel; applying the Act to the judicial branch would, under that view, interfere with the constitutional grants of authority. The chief judge notes that the provisions do not contain the limiting phrase "as provided by law," which is customarily used to signify legislative authority over a subject (see *People v. Joseph* (1986), 113 Ill. 2d 36, 43).

The grants of administrative and supervisory authority had their origins in the 1964 amendment to the judicial article of the previous constitution. The 1964 revision gave Illinois a modern, unified court system, and to that end the grants of administrative control served to establish the general authority of the supreme court over

the State court system, as well as the authority of the chief circuit judges over the administration of their respective circuits. Section 2 of the judicial article of the previous constitution, as amended, provided that "[g]eneral administrative authority over all courts in this State *** is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." (Ill. Const. 1870, art. VI (1964), sec. 2.) The reference to the supreme court's "general administrative authority" was modified by the drafters of the current constitution, which vests in this court "general administrative and supervisory authority." The addition of the term "supervisory" to the grant of administrative authority "emphasizes the importance of the general administrative authority of the Supreme Court over the Illinois court system. The words were intended to strengthen the concept of central supervision of the judicial system." (Ill. Ann. Stat., 1970 Const., art. VI, sec. 16, Constitutional Commentary, at 527 (Smith-Hurd 1971).) The administrative authority enjoyed by the chief circuit judges is set out in the current constitution in essentially the same terms that were used by the drafters of the 1964 judicial article. See Ill. Const. 1870, art. VI (1964), sec. 8.

We should not assume that the administrative and supervisory powers vested in the courts are so broad that every detail affecting personnel must be reserved exclusively to the judicial branch. In large part, the three branches of government must be considered interdependent, and some blurring of their roles is not only inevitable but also necessary to their smooth functioning. In *People v. Reiner* (1955), 6 Ill. 2d 337, 342, the court observed that "there has been recognition of the basic fact that the three departments are parts of a single operating government, and that the separation of powers clause was not designed to achieve a complete divorce between them." The administrative and supervisory

powers should be regarded in a similar practical light. It is therefore important to distinguish between an order by the State Board directly impairing the administrative and supervisory authority of the judiciary and one that would have only an indirect or collateral effect, if any. Final orders by the State Board in cases involving unfair labor practices are reviewable in the appellate court. (See Ill. Rev. Stat. 1985, ch. 48, par. 1611(e).) In this context administrative review would provide a forum for determining whether the agency's order infringes on the administrative and supervisory authority granted by the Constitution to the judicial branch. In each particular case, then, judicial control would be available as a necessary check on intrusions into those powers reserved to the judicial branch. Essential judicial control would also be maintained over any grievance resolution procedure agreed to by the parties under the Act. (See Ill. Rev. Stat. 1985, ch. 48, par. 1608.) Such a procedure would be governed by the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, pars. 101 through 123), which provides that upon application to the circuit court, an arbitral decision may be vacated if the arbitrators exceeded their authority (Ill. Rev. Stat. 1985, ch. 10, par. 112(a)(3)).

For these reasons, we hold that the inclusion of judicial employees within the Act does not by itself trench on the separation of powers principle or on the general administrative and supervisory authority granted by the Constitution to the judicial branch. A number of other States have considered similar issues regarding collective-bargaining laws and judicial or court-related employees. Although the relevant constitutional and statutory provisions are not uniform from one jurisdiction to another, it may be said that our result here is generally consistent with the approaches followed by the other States. (See, *e.g.*, *State ex rel. O'Leary v. Missouri State Board of Mediation* (Mo. 1974), 509 S.W.2d 84;

*Circuit Court v. AFSCME Local 502-A* (1983), 295 Or. 542, 669 P.2d 314; *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board* (1978), 479 Pa. 440, 388 A.2d 736; *Ellenbogen v. County of Allegheny* (1978), 479 Pa. 429, 388 A.2d 730; see also *Zylstra v. Piva* (1975), 85 Wash. 2d 743, 539 P.2d 823 (collective-bargaining law applicable to units of local government could be applied to employees of county juvenile court facility to the extent they were employees of the county); compare *Judges of the 74th Judicial District v. County of Bay* (1971), 385 Mich. 710, 190 N.W.2d 219 (public employee bargaining law held applicable to district court employees) with *In re Michigan Employment Relations Commission's Order* (1979), 406 Mich. 647, 281 N.W.2d 299 (applying public-employee bargaining law to employees of State supreme court would interfere with court's constitutional authority over its own staff).) We emphasize the posture of the proceedings before us. The cases consolidated here are preliminary attempts to gauge the scope of the Act, and they come well in advance of any determinations by the State Board of the myriad questions that may be presented under the statutory scheme. Particular problems, including some on a constitutional level, are sure to arise as the broad provisions of the Act are applied to the unique workings of the judicial branch, but those questions are not before us here. For these reasons, then, we do not consider several other questions that the parties pose—whether the Act violates principles of judicial immunity, and whether the Act is unconstitutional for permitting strikes by employees of the judicial branch, and, if a strike is enjoined, for committing to appointees of the executive branch the power to accept or reject an arbitral decision affecting judicial personnel.

## IV

In his complaint for a writ of prohibition or *mandamus*, Chief Judge Agnew also makes a number of more general challenges to the constitutionality of the Act. These concern the scope and effect of its provisions as well as formal matters pertaining to its passage. For the reasons that follow, we conclude that the Act survives these constitutional challenges.

Excluded from the coverage of the Act are educational employees (see Ill. Rev. Stat. 1985, ch. 48, par. 1603(n)), and Chief Judge Agnew contends that this violates equal protection and is invalid as special legislation under the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2; art. IV, sec. 13). It must be noted, however, that educational employers and employees are the subject of their own system of collective bargaining, the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1701 through 1721), which went into effect shortly before the provisions in question here. In section 1 (Ill. Rev. Stat. 1985, ch. 48, par. 1701) the legislature noted the "uniqueness of the educational work calendar and educational work duties and the traditional and historical patterns of collective bargaining between educational employers and educational employees" and found that those "substantial differences" warranted the separate legislation. We believe that excluding educational employees from the Act here and creating the separate scheme pertaining to their unique requirements is rationally related to the legitimate governmental interest of regulating collective bargaining in these areas. (See *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 367-68.) The chief judge would find a similar problem in the exclusion of non-State peace officers from the original definition of "public employee." (See Ill. Rev. Stat., 1984 Supp., ch. 48, par.

1603(m).) The Act has since been amended to remove that exception, however, and we see no reason here not to decide the case under current rather than prior law. (*Cf. Zablocki v. Redhail* (1978), 434 U.S. 374, 382 n.9, 54 L. Ed. 2d 618, 628 n.9, 98 S. Ct. 673, 679 n.9). The argument therefore has been rendered moot by the amendment.

The chief judge also contends that passage of the Act required extraordinary majorities in both houses of the legislature, which it did not have. He draws this requirement from article VII, section 6(g), of the Illinois Constitution, which provides, "The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State" (Ill. Const. 1970, art. VII, sec. 6(g)). Home rule activity may be preempted by a simple majority if the State itself exercises or performs the power or function in question (Ill. Const. 1970, art. VII, sec. 6(h)), and that is what the Act purports to do here (see Ill. Rev. Stat. 1985, ch. 48, par. 1615). The chief judge would identify the negotiating process as the function or power restricted by the Act; because the State does not perform that function on behalf of public employers, the chief judge concludes that the bill required the special three-fifths approval rate. Neither the chief judge nor the State is a home rule unit (see Ill. Const. 1970, art. VII, sec. 6(a)), so the chief judge's argument assumes, for purposes of standing, that the entire Act would fall if the restriction on home rule activity were found to be invalid. We shall make the same assumption and consider the question on its merits.

The argument misconstrues the scope and effect of the Act. The provisions set out a comprehensive scheme regulating collective bargaining for public employees, and under the Act the State has reserved to itself the

power or function of governing the subject, in both its substantive and procedural aspects. That the public employers themselves are to carry on the negotiations does not mean that the State has renounced its control over the subject. Therefore, the Act does not restrict home rule authority in a power or function not performed by the State, and the requirement of an extraordinary majority for passage of the legislation did not come into play.

The chief judge would also find that the Act impermissibly amended much of Illinois' codified law pertaining to public employees without setting out the amended provisions. This would be a violation of article IV, section 8(d), of the Illinois Constitution (Ill. Const. 1970, art. IV, sec. 8(d)), which provides that a legislative bill "expressly amending a law shall set forth completely the sections amended." This requirement is designed to prevent confusion, but it does not require the repetition of all statutes that may be affected by a new law. " 'Where a new law is complete in itself and entirely intelligible without reference to prior legislation it is valid though incidentally its effect is to modify existing law.' " (*Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 140, quoting *People ex rel. McDonough v. Beemsterboer* (1934), 356 Ill. 432, 435; see *Fuehrmeyer v. City of Chicago* (1974), 57 Ill. 2d 193, 199-200.) The Act does not purport to amend any existing statute, and it is complete and intelligible in itself. The chief judge does not point to any specific provision in other legislation that has been directly or indirectly amended by the Act. Any effect upon existing law resulting from the passage of the Act is incidental and does not constitute a forbidden amendment. The Act does not violate the constitutional prohibition.

The chief judge also argues that the Act violates the single-subject requirement of the State Constitution. Sec-

tion 8(d) of article IV provides that "[b]ills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject" (Ill. Const. 1970, art. IV, sec. 8(d)), and the chief judge believes that the Act, in its broad sweep, concerns more than a single subject.

The single-subject requirement was intended to prevent the combination of unrelated subjects in one bill to obtain support for the package as a whole, when the separate parts could not succeed on their individual merits. (See *Fuehrmeyer v. City of Chicago* (1974), 57 Ill. 2d 193, 201-02.) "The term 'subject' is comprehensive in its scope and may be as broad as the legislature chooses, so long as the matters included have a natural or logical connection. An act may include all matters germane to its general subject, including the means reasonably necessary or appropriate to the accomplishment of the legislative purpose." (*People ex rel. Gutknecht v. City of Chicago* (1953), 414 Ill. 600, 607-08; see *People ex rel. Ogilvie v. Lewis* (1971), 49 Ill. 2d 476, 487-88.) The Act provides a comprehensive scheme governing collective bargaining among public employees, and the chief judge has not pointed to anything in the Act that fails to pertain to this broad field. We do not believe that the Act violates the single-subject requirement.

The chief judge makes the related argument that a later amendment, Public Act 84—1104, violated the single-subject requirement. The amendatory act concerned the collective-bargaining rights of peace officers and firefighters and the pensions of peace officers and made a number of general changes applicable to all public-employee labor relations. Contrary to the chief judge's argument, we believe that all the matters in the amendatory act pertained to public employment and public labor relations, and therefore the amendatory act did not violate the single-subject requirement. Accord, *Schlenz v.*

*Castle* (1981), 84 Ill. 2d 196; *People ex rel. Carey v. Board of Education* (1973), 55 Ill. 2d 533.

As a final challenge to the constitutionality of the Act, the chief judge contends that the governor exceeded the scope of his amendatory veto power in recommending certain changes to the Act, which the legislature concurred in. Section 9(e) of article IV of the State Constitution provides that "[t]he Governor may return a bill together with specific recommendations for change to the house in which it originated." (Ill. Const. 1970, art. IV, sec. 9(e).) Although the governor may not use the power to substitute an entirely new bill for the one passed by the legislature (*People ex rel. Klinger v. Howlett* (1972), 50 Ill. 2d 242, 249), he is not limited to correcting formal or technical errors (*People ex rel. City of Canton v. Crouch* (1980), 79 Ill. 2d 356, 375; *Continental Illinois National Bank & Trust Co. v. Zagel* (1979), 78 Ill. 2d 387, 398). With respect to the Act, the chief judge points to four major changes that, he believes, demonstrate a fundamental reworking of the original legislation. Here, the governor recommended that educational employees be deleted from the Act—they were already the subject of a separate bill, the Illinois Educational Labor Relations Act. Also, the governor recommended the addition of a provision concerning the bistate development agency (Ill. Rev. Stat. 1985, ch. 48, par. 1622), which was intended to transfer to the State Board jurisdiction over labor matters involving that agency while adhering to Federal labor requirements applicable to its employees. (See Jenkins, *Collective Bargaining for Public Employees: An Overview of Illinois' New Act*, 1983 S. Ill. U.L.J. 483, 502.) Finally the Governor recommended that the anti-injunction act (Ill. Rev. Stat. 1985, ch. 48, par. 2a) be made applicable to the provisions here (see Ill. Rev. Stat. 1985, ch. 48, par. 1627), and that two departmental directors be added to

the membership of the State's governing body, that special group that reviews impasse arbitration decisions involving the State (see Ill. Rev. Stat. 1985, ch. 48, par. 1603(h)). The legislature concurred in the governor's recommendations. We do not believe that the changes disturbed the basic purpose of the legislation or altered the system prescribed for carrying that out. These changes were consistent with the scope of the Governor's amendatory veto power.

## V

Legislation is presumed to be constitutional, and the party challenging an act has the burden of establishing its invalidity. (*Quinn v. Donnewald* (1985), 107 Ill. 2d 179, 194.) That burden was not met on the issues determined here. We have concluded that judicial employees are within the scope of the Act, and that their inclusion does not by itself violate the separation-of-powers principle or trench on the administrative and supervisory authority granted by the Constitution to the judicial branch. Moreover, we have held that the Act survives several other, more general challenges made to its constitutionality. Accordingly, the judgment of the appellate court in cause No. 63084 is affirmed, and the writ of *mandamus* or prohibition in cause No. 63116 is denied.

*63084 — Judgment affirmed.*
*63116 — Writ denied.*