# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Board of Education of Peoria School District No. 150 v. Peoria Federation of Support Staff, Security/Policemen's Benevolent & Protective Ass'n Unit No. 114,**
**2012 IL App (4th) 110875**

---

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF PEORIA SCHOOL DISTRICT NO. 150, PEORIA COUNTY, ILLINOIS, Plaintiff-Appellant, v. THE PEORIA FEDERATION OF SUPPORT STAFF, SECURITY/POLICEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION UNIT NO. 114; THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD; and THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0875 |
| Argued | June 19, 2012 |
| Filed | July 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff school district's action alleging that the amendment to the Illinois Public Labor Relations Act that reclassified as public employees certain peace officers previously deemed educational employees, including the security officers employed by plaintiff, was unconstitutional special legislation that did not apply to plaintiff and that the Illinois Educational Labor Relations Board still had exclusive jurisdiction over labor disputes between the district and its security officers was sufficient to withstand the motion to dismiss filed by the Illinois Educational Labor Relations Board and the Illinois Labor Relations Board. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-MR-106; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Stanley B. Eisenhammer (argued), Elizabeth Jensen, and Christopher M. Hoffmann, all of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Sharon A. Purcell (argued), Assistant Attorney General, of counsel), for appellees Illinois Educational Labor Relations Board and Illinois Labor Relations Board, State Panel. |
| | Shane M. Voyles (argued), of Police Benevolent Labor Committee, of Springfield, for appellees Peoria Federation of Support Staff and Security/Policemen's Benevolent and Protective Association Unit No. 114. |
| Panel | JUSTICE COOK delivered the judgment of the court, with opinion. |
| | Justices Steigmann and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1      This appeal concerns the validity of Public Act No. 96-1257 (Pub. Act 96-1257, § 5 (eff. July 23, 2010) (amending section 3 of the Illinois Public Labor Relations Act (Public Labor Relations Act) (5 ILCS 315/3 (West 2010)) and the jurisdictions of the Illinois Labor Relations Board and the Illinois Educational Labor Relations Board (Educational Labor Relations Board) with respect to police and security officers employed directly by school districts. Public Act No. 96-1257 expands the scope of the Public Labor Relations Act and the jurisdiction of the Illinois Labor Relations Board by reclassifying as public employees certain peace officers previously considered educational–not public–employees. Under the Public Labor Relations Act as amended, these peace officers, their employers, and the relations between them are now governed by the Public Labor Relations Act, rather than the previously applicable Illinois Educational Labor Relations Act (Educational Labor Relations Act) (115 ILCS 5/1 to 21 (West 2010)), and overseen by the Illinois Labor Relations Board, rather than the Educational Labor Relations Board.

¶ 2    In March 2011, plaintiff, the Board of Education of Peoria School District No. 150, Peoria County, Illinois, filed a two-count complaint for declaratory and injunctive relief against defendants, the Peoria Federation of Support Staff, Security/Policemen's Benevolent and Protective Association Unit No. 114 (Unit No. 114); the Educational Labor Relations Board; and the Illinois Labor Relations Board, State Panel. In count I, plaintiff challenged the constitutionality of Public Act No. 96-1257, claiming it violates the prohibition against special legislation (Ill. Const. 1970, art. IV, § 13). In count II, plaintiff alleged that the Educational Labor Relations Board, not the Illinois Labor Relations Board, had exclusive administrative jurisdiction over unfair labor practice claims between plaintiff and Unit No. 114 and any relevant bargaining-unit determinations, notwithstanding the amendatory public act. In September 2011, the trial court granted the labor boards' motion to dismiss both counts of the complaint. Plaintiff appeals. We agree with plaintiff that dismissal was improper and, accordingly, reverse and remand.

¶ 3                                      I. BACKGROUND

¶ 4    According to the complaint, plaintiff is the only Illinois school district that maintains its own police force–that is, employs officers directly. (In general, other districts obtain police protection for their schools by coordinating with local police departments.) Currently, plaintiff's police force consists of 26 officers who have received or have been scheduled to receive instruction under the Illinois Police Training Act (50 ILCS 705/1 to 12 (West 2010)). Since 1989, officers employed by plaintiff have been represented by iterations of a union certified by the Educational Labor Relations Board. These bargaining units have been responsible for entering collective-bargaining agreements regarding the conditions of officers' employment with plaintiff. The most recent such agreement expired on June 30, 2010.

¶ 5    In December 2010, plaintiff and Unit No. 114 began negotiating a new collective-bargaining agreement. Negotiations broke down when plaintiff ceased allowing members of Unit No. 114 to attend negotiations during work hours. In a December 2010 letter to plaintiff, a union representative stated, "I am prepared to file a charge, duplicate if necessary with the [Educational Labor Relations Board] and the [Illinois Labor Relations Board], over the District's retaliation to the unit by threatening to discontinue the status quo for bargaining during working hours."

¶ 6    A further dispute arose regarding which labor relations act–Public or Educational–governed negotiations. This question turned on the applicability of Public Act No. 96-1257. The union maintained that, pursuant to Public Act No. 96-1257, negotiations fell under the Public Labor Relations Act. Plaintiff maintained the Educational Labor Relations Act continued to apply to the bargaining because the public act (1) was unenforceable, unconstitutional special legislation and (2) did not apply, by its terms, to plaintiff and Unit No. 114. On March 3, 2011, Unit No. 114 applied for certification with the Illinois Labor Relations Board as the bargaining representative of "[a]ll full-time and part-time guards, agents, security and police employees" employed by plaintiff–the bargaining unit previously certified by the Educational Labor Relations Board.

¶ 7     On March 15, 2011, plaintiff filed its two-count complaint against Unit No. 114 and the labor boards. In count I, plaintiff alleged Public Act No. 96-1257 was unconstitutional. Plaintiff sought, in part, a declaration of the statute's unconstitutionality and an injunction against its enforcement. In count II, plaintiff alleged Public Act No. 96-1257 was inapplicable. Plaintiff sought, in part, a declaration that the officers it employs are not covered by the statutory amendment and that the Educational Labor Relations Board continued to have exclusive jurisdiction over labor disputes between plaintiff and Unit No. 114 and an injunction barring the Illinois Labor Relations Board from asserting jurisdiction over the parties.

¶ 8     In April 2011, the labor boards filed a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). They contended that the facts alleged in each count of the complaint, if proved, would not state a claim for relief. That same month, Unit No. 114 filed a separate section 2-615 motion to dismiss, appending materials it alleged refuted plaintiff's claim that the public act did not apply to the parties. In September 2011, the trial court denied Unit No. 114's motion but granted the boards', dismissing the action with prejudice.

¶ 9     This appeal followed.

¶ 10                   II. ANALYSIS

¶ 11     On appeal, plaintiff argues each count of its complaint alleged facts sufficient to state a claim for relief. We agree.

¶ 12             A. Section 2-615 and the Standard of Review

¶ 13     A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. Dismissal under section 2-615 is appropriate only if "it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* In ruling on such a motion, the court construes the allegations in the complaint liberally and in the light most favorable to the plaintiff and accepts as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Id.* We review the trial court's order granting the labor boards' motion to dismiss *de novo*. *Id.*

¶ 14            B. Overview of the Public Labor Relations Act
                      and Public Act No. 96-1257

¶ 15     The Public Labor Relations Act regulates labor relations between public-sector employers and employees, "including the designation of employee representatives, negotiation of wages, hours and other conditions of employment, and resolution of disputes arising under collective bargaining agreements." 5 ILCS 315/2 (West 2010). The entities whose labor relations the act covers are described in sections defining "public employee" and "public employer." 5 ILCS 315/3(n), (o) (West 2010). Before and after amendment, subject only to enumerated exceptions, school districts and their employees are specifically excluded

-4-

from these definitions. 5 ILCS 315/3(n), (*o*) (West 2008); 5 ILCS 315/3(n), (*o*) (West 2010). (Instead, school districts and their employees, respectively, are generally considered educational employers and educational employees under the Educational Labor Relations Act. 115 ILCS 5/2(a), (b) (West 2010).) Under Public Act No. 96-1257, "a school district in the employment of peace officers in its own police department in existence on the effective date of this amendatory Act of the 96th General Assembly" is now a public employer as an exception to the general exemption covering school districts. 5 ILCS 315/3(*o*) (West 2010). Correspondingly, under the amendment, "peace officers employed by a school district in its own police department in existence on the effective date of this amendatory Act of the 96th General Assembly" are now public employees as an exception to the general exemption of school districts' employees. 5 ILCS 315/3(n) (West 2010).

¶ 16    The relevant effect of Public Act No. 96-1257 on labor relations concerns employees' right to strike. Under both the Educational Labor Relations Act and the Public Labor Relations Act, employees are generally permitted to strike when collective bargaining breaks down, subject to enumerated conditions. 115 ILCS 5/12 (West 2010); 5 ILCS 315/7, 13, 14 (West 2010). However, the Public Labor Relations Act precludes public employees employed as security personnel, peace officers, or firefighters from striking and instead provides for interest arbitration between them and their employers. 5 ILCS 315/14, 17 (West 2010); see also 5 ILCS 315/2 (West 2010) ("It is the public policy of the State of Illinois that where the right of employees to strike is prohibited by law, it is necessary to afford an alternate, expeditious, equitable and effective procedure for the resolution of labor disputes ***."). This court has explained that the right to interest arbitration reserved for employees prohibited from striking resulted from a *quid pro quo* of "economic weapon[s]." *State of Illinois Department of Central Management Services v. State of Illinois Labor Relations Board, State Panel*, 373 Ill. App. 3d 242, 253, 869 N.E.2d 274, 283 (2007) (hereinafter *CMS*). Depriving such security, police, and firefighting employees of the right to strike due to the indispensable nature of their services puts them at a bargaining disadvantage with respect to their employers; the legislature sought to correct this imbalance in bargaining power by affording such employees "access to an economic bargaining weapon that is qualitatively similar to the right to strike"–*i.e.*, interest arbitration. *Id.* at 255, 869 N.E.2d at 284.

¶ 17                              C. Count I: Special-Legislation Claim

¶ 18    In count I of its complaint, plaintiff alleges Public Act No. 96-1257 violates the constitutional prohibition against special legislation. That prohibition states, "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13. The special-legislation clause prohibits the legislature from "conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated." *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 325, 837 N.E.2d 88, 94 (2005). In other words, "[w]hile the legislature has broad discretion to make statutory classifications, the special legislation clause prevents it from making classifications that arbitrarily discriminate in favor of a select group." *Id.* Two

elements comprise a special-legislation challenge: (1) "the statutory classification at issue discriminates in favor of a select group," and (2) "the classification is arbitrary." *Id.*

¶ 19 In determining whether a statutory classification is arbitrary, the same standards of scrutiny apply to equal-protection and special-legislation challenges. *Id.* Where, as here, no fundamental right or suspect class is affected by the statute in question, we apply "the deferential rational basis test." *Id.* Under that test, a statute is constitutional so long as the distinction it draws between groups is "rationally related to a legitimate state interest." *Id.* That is, the statute must be upheld if the court "can reasonably conceive of any set of facts that justifies distinguishing the class the statute benefits from the class outside its scope." *Id.*, 837 N.E.2d at 94-95.

¶ 20 Plaintiff's complaint makes out a claim that Public Act No. 96-1257 is special legislation. That is, the complaint alleges facts which, if proved, would show that the public act discriminates in favor of a select group and that the distinction it draws is arbitrary.

¶ 21 Assuming it applies to these parties, the relevant distinctions made by Public Act No. 96-1257, we find, are (1) between peace officers employed by plaintiff, the only district currently employing police officers directly, and any peace officers who may be employed directly by other school districts in the future; and (2) between plaintiff and any school district that, in the future, may employ peace officers directly.

¶ 22 Citing *CMS*, the labor boards initially argue plaintiff failed to allege the public act discriminates in favor of a select group because the interest arbitration provided for peace officers who are public employees under the amendment to the Public Labor Relations Act is equivalent to and no more favorable than the right to strike enjoyed by educational employees. That is, according to the labor boards, assuming Public Act No. 96-1257 applies to these parties, the police officers plaintiff employs are no better off, relative to plaintiff, as public employees under the amendment, who are permitted to pursue interest arbitration, than as educational employees, who are permitted to strike. The boards argue, "[Plaintiff] may prefer to proceed under one alternative rather than the other, but its preference does not state a claim for special legislation."

¶ 23 We disagree with this assertion. Plaintiff is in a unique position to evaluate the effect of the Public Labor Relations Act's interest-arbitration scheme for police and security employees on plaintiff's influence on labor negotiations with Unit No. 114. Thus, especially considering the court's duty when ruling on a motion to dismiss to construe the pleadings in the light most favorable to the plaintiff, we are inclined to give plaintiff the benefit of the doubt when it asserts that Public Act No. 96-1257, if it applies to these parties, favors Unit No. 114 and disfavors plaintiff by substituting interest arbitration for the employees' right to strike.

¶ 24 Further, contrary to the labor boards' implication, this court did not, in *CMS*, evaluate the desirability of interest arbitration *versus* striking from either the employee's or the employer's perspective, let alone conclude the alternative proceedings were a wash for all parties. Rather, this court merely explained that interest arbitration was intended to be a qualitatively similar substitute for striking. The parties have cited no cases stating or holding the right to strike benefits an employee as much as the right to engage in interest arbitration,

which is the crux of the labor boards' position. It remains possible that, in application, by allowing them to pursue interest arbitration, the legislature overcorrected the perceived imbalance between police and security employees and their employers created by denying these employees the right to strike, even if arbitration is a theoretically equivalent "economic weapon."

¶ 25   Plaintiff also raises a legitimate concern that the statutory distinctions identified above are arbitrary–that is, that they are not rationally related to a legitimate state interest. Here, the labor boards assert that Public Act No. 96-1257 advanced the state's interest in treating all police officers similarly with respect to the right to strike, regardless of whether they are employed by a school district or a conventional police department. While legitimate, the interest asserted by the labor boards cannot rationally account for the identified distinctions.

¶ 26   By its terms, only peace officers "employed by a school district in its own police department in existence on the effective date" of Public Act No. 96-1257 are defined as public employees under the amended Public Labor Relations Act. 5 ILCS 315/3(n) (West 2010). By specifically referring to officers "employed by a school district in its own police department," the public act distinguishes between officers who are employed by local police departments but work in and for the schools–who were already treated as public employees and covered by the Public Labor Relations Act–from officers directly employed by school districts–who were previously considered educational employees under the Educational Labor Relations Act. This reasonably addresses the legislature's legitimate interest in ensuring that police officers employed directly by school districts, who provide services necessary to the public safety, like all other officers, are barred from striking.

¶ 27   However, the distinction between officers employed by schools and those employed by other entities is not the troubling distinction. The relevant differences are in (1) the statute's treatment of officers currently employed by school districts and those who may be employed by other school districts in the future and (2) its corresponding treatment of the school districts employing such officers. We note Unit No. 114's claim that, notwithstanding its plain language, Public Act No. 96-1257 applies prospectively. To the contrary, assuming the amendment applies to plaintiff and Unit No. 114, because the class of officers affected by the amendment closed on July 23, 2010 (the public act's effective date), any officers directly employed by school districts other than plaintiff in the future will remain under the purview of the Educational Labor Relations Act, not the Public Labor Relations Act. Officers covered by the Educational Labor Relations Act, like plaintiff's police force before the amendment, will be allowed to strike but will be precluded from pursuing interest arbitration. If the legitimate interest justifying the classification in the amendment is to ensure that police officers, no matter who employs them, are not allowed to strike, then the distinction between police employees of school districts currently employing police officers and those of school districts that may employ police in the future is irrational. No legitimate state interest identified by the parties–and none we can conceive of–accounts for the closing of the affected class by reference to the statute's effective date. The date-based distinction may have been rational if, for instance, some earlier legislation foreclosed any school district not already in employment of its own police officers from directly employing them in the future, but we have found no such prohibition.

¶ 28    The legislature defined the class affected by Public Act No. 96-1257 by reference to school districts directly employing police officers on a date when the legislature believed only plaintiff and its officers would be affected. See 96th Ill. Gen. Assem., Senate Proceedings, Mar. 18, 2010, at 74 (Senator Koehler remarking, "The only place this affects in the State is Peoria public schools. What it does *** is it takes away the right to strike by the police group and it puts any contract disputes into interest arbitration."); 96th Ill. Gen. Assem., House Proceedings, Apr. 29, 2010, at 49 (Representative Smith indicating, "This is not specific to Peoria. It would apply to any school district that employs its own police officers, and we're told that Peoria's the only one that does that."). The prohibition against special legislation does not *per se* prohibit legislation regulating a generally defined class that happens to have only one member. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 154, 849 N.E.2d 349, 364 (2006) ("Nothing in that provision bars the legislature from enacting a law specifically addressing the conditions of an entity that is uniquely situated."). However, in this case, assuming the public act applies to these parties, the legislature arbitrarily set the classification in Public Act No. 96-1257 so that only plaintiff can be affected even if it loses, by possibly unforeseen circumstances, its distinction as the only school district in the state that maintains its own police force.

¶ 29    Our conclusion that plaintiff adequately alleged that the distinctions drawn by the statute at issue are arbitrary is unaffected by the labor boards' assertion that no other school district is likely to begin directly employing police officers in the foreseeable future. Plaintiff's right not to be disadvantaged by special legislation is at issue *now* in ongoing bargaining and labor disputes. We will not wait to see whether another school district actually establishes its own police force in the future; plaintiff's constitutional challenge does not depend on this contingency.

¶ 30                    D. Count II: Applicability of the Public Act

¶ 31    In count II of the complaint, plaintiff alleged the Illinois Labor Relations Board lacked administrative jurisdiction over plaintiff and Unit No. 114 under Public Act No. 96-1257 because, according to plaintiff, plaintiff did not employ "peace officers" and did not maintain "its own police department" as those terms were used in the Public Labor Relations Act's amended definitions of public employee and public employer. This states a claim for which the trial court is authorized to grant relief, including the declaratory and injunctive relief plaintiff requests.

¶ 32    In general, plaintiffs must exhaust available administrative remedies before they seek equitable relief from administrative action. *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill. App. 3d 151, 155, 558 N.E.2d 668, 671 (1990). In this case, as the labor boards contend and the trial court found, plaintiff failed to await the Illinois Labor Relations Board's final administrative determination whether to certify Unit No. 114 as the exclusive bargaining representative of the security and police officers employed by plaintiff.

¶ 33    Nevertheless, an exception to the exhaustion requirement exists for challenges to an administrative agency's jurisdiction. *Id.* at 156, 558 N.E.2d at 671; see also *County of Kane*

*v. Carlson*, 116 Ill. 2d 186, 199, 507 N.E.2d 482, 486 (1987) ("The rule [of exhaustion of remedies] does not apply when a party challenges the constitutionality of a statute on its face [citations] or contests the authority or jurisdiction of the administrative agency [citations] ***."). For example, in one of two consolidated appeals in *County of Kane*, the chief judge of a judicial circuit challenged the Illinois Labor Relations Board's jurisdiction over charges of unfair labor practices filed against him by a union of probation officers. *County of Kane*, 116 Ill. 2d at 199, 507 N.E.2d at 486. Along with constitutional challenges to the authority of the statute based on the separation of powers, the chief judge argued he was not a public employer and, thus, "not within the scope of the [Public Labor Relations] Act." *Id.* at 201, 507 N.E.2d at 487. Because he challenged the labor board's jurisdiction, and because "the questions presented [were] entirely legal and [did] not require fact finding by the administrative agency or an application of its particular expertise," the supreme court held the judge was not required to exhaust administrative remedies before seeking declaratory and injunctive relief in the trial court. *Id.* at 199-200, 507 N.E.2d at 486.

¶ 34    Similarly, in *Lake County*, 200 Ill. App. 3d at 153-54, 558 N.E.2d at 669, in a complaint before the trial court seeking declaratory and injunctive relief, a State's Attorney challenged the jurisdiction of the Department of Human Rights over an assistant State's Attorney's charge before that agency of race- and sex-based discrimination. Among other things, the State's Attorney alleged the assistant State's Attorney was not an "employee" and the State's Attorney was not an "employer" or a "person" as used in the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, ¶¶ 2-101(A), (B), 1-103(L)). *Lake County*, 200 Ill. App. 3d at 153-54, 558 N.E.2d at 669. The trial court dismissed for lack of jurisdiction because the State's Attorney failed to exhaust administrative remedies. *Id.* at 153, 558 N.E.2d at 670.

¶ 35    The appellate court, however, found the trial court had jurisdiction over the State's Attorney's complaint because it attacked the administrative jurisdiction of the Department of Human Rights and therefore was exempt from exhaustion requirements. *Id.* at 156-57, 558 N.E.2d at 672. As in *County of Kane*, the appellate court found the State's Attorney's jurisdictional challenge raised "entirely legal" questions. (Internal quotation marks omitted.) *Id.* The appellate court held, "The State's Attorney need not first subject himself to an exercise of jurisdiction of the [Human Rights] Commission, which is not authorized by law[,] simply to obtain a decision from which he could" pursue administrative relief and, ultimately, appeal. *Id.* at 157, 558 N.E.2d at 672; see also *id.* (" '[W]here the remedy of administrative and judicial review would come only after a hearing which the [administrative agency] has no jurisdiction to hold, it can be said that, as a matter of law, [the plaintiff] has no other adequate remedy than the writ of prohibition [(a court ruling enjoining the agency from exercising jurisdiction)].' " (quoting *People ex rel. Olin Corp. v. Department of Labor*, 95 Ill. App. 3d 1108, 1112, 420 N.E.2d 1043, 1047 (1981))).

¶ 36    Here, plaintiff alleges it is not a public employer and the members of Unit No. 114 are not public employees because (1) its employees are not "peace officers" and (2) plaintiff does not maintain "its own police department." These allegations are sufficiently analogous to the plaintiffs' jurisdictional challenges in *County of Kane* and *Lake County* that we hold plaintiff was not required to exhaust administrative remedies. The Public Labor Relations Act provides employers with no means to challenge the Illinois Labor Relations Board's

jurisdiction during the process for certifying a union as the exclusive bargaining representative of its members–the action Unit No. 114 sought here. Rather, plaintiff would have been required to await an adverse determination before pursuing judicial review in the appellate court as provided in section 9(i) of the Public Labor Relations Act (5 ILCS 315/9(i) (West 2010)), where it could retroactively challenge the agency's jurisdiction. That result is at odds with the well-reasoned holding of *Lake County*.

¶ 37    The labor boards assert ruling on plaintiff's jurisdictional challenge would require the trial court to reach the merits of Unit No. 114's petition for certification as a bargaining unit by the Illinois Labor Relations Board. They cite *Nestle USA, Inc. v. Dunlap*, 365 Ill. App. 3d 727, 734, 852 N.E.2d 282, 288 (2006), where this court stated, "Jurisdiction should not be determined by a ruling on the merits." In that case, the plaintiff sought a declaratory judgment that the Illinois Workers' Compensation Commission had exceeded its statutory powers when an arbitrator working on the agency's behalf reinstated a claim beyond, the plaintiff argued, the time allotted for doing so. *Id.* at 733, 852 N.E.2d at 287. This court found the plaintiff was attempting to "skip *** review [by the administrative agency] and seek judicial review by alleging that the arbitrator's decision was not authorized by statute. Trial courts would be forced [in such circumstances] to first determine if arbitrators' decisions were wrong in order to determine if they had jurisdiction." *Id.* at 734-35, 852 N.E.2d at 288. This court held the plaintiff was required to exhaust administrative remedies. *Id.* at 735, 852 N.E.2d at 288.

¶ 38    This case is distinguishable from *Nestle* because plaintiff has not asked the trial court to address the merits of Unit No. 114's application for certification. When a majority of a group of public employees seeks certification as the exclusive bargaining representative of that group, the Illinois Labor Relations Board "shall decide in each case, in order to assure public employees the fullest freedom in exercising the rights guaranteed by this Act, a unit appropriate for the purpose of collective bargaining." 5 ILCS 315/9(b) (West 2010). The *merits* of such a determination, as we used that term in *Nestle*, include among other things whether the petitioned unit is "appropriate" and whether the petitioners complied with mandated voting procedures. The questions of whether the unit's members are public employees and their employer a public employer are jurisdictional prerequisites apart from the merits of the case. These are questions appropriately addressed by a trial court prior to a plaintiff's submission to an administrative agency's unauthorized exercise of its jurisdiction.

¶ 39    The allegations of plaintiff's complaint are sufficient to withstand the labor boards' motion to dismiss. The trial court erred by granting the motion. Accordingly, we reverse and remand.

¶ 40                                    III. CONCLUSION

¶ 41    For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

¶ 42    Reversed and remanded.