THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ABRAHAM P. ABRAHAM, Defendant-Appellant.

Second District    No. 2—00—0195

Opinion filed July 30, 2001.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert E. Davison, of DePaepe & Davison, of Springfield, for the People.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Abraham P. Abraham, was convicted of attempted first-degree murder (720 ILCS 5/8—4 (West 1994)), aggravated battery (720 ILCS 5/12—4 (West 1994)), and armed violence (720 ILCS 5/33A—2 (West 1994)) following a jury trial in the circuit court of Du Page County. Defendant now raises two issues on appeal. First, he contends that the trial court exceeded the mandate of this court, issued following an earlier appeal, when it allowed the State to reinstate several charges that it had previously dismissed pursuant to a plea agreement. Second, defendant argues that the trial court erred in allowing the State to introduce into evidence several incidents of domestic violence that preceded the incident that forms the basis of defendant's current convictions. We affirm.

## I. BACKGROUND

At the time of the incident at issue in the instant case, defendant and the victim, Brissy Abraham, were married. They had three children. Following an incident of domestic violence on July 4, 1993, the Department of Children and Family Services (DCFS) became involved with the family. In March 1994, DCFS had defendant removed from the household because of his alcohol consumption, which had been escalating. Defendant had not been consuming much alcohol in the period following DCFS's initial involvement with the family. Defendant was boarded in a halfway house located in Aurora.

At trial, Brissy testified to the following events. On the morning of April 4, 1994, Brissy returned home from grocery shopping and found defendant in the living room. Defendant was well dressed, groomed, and did not appear intoxicated. She told him to leave several times. Defendant stated that he had come to kill the family and himself. Brissy attempted to call the police, but defendant removed the phone adapter from the wall and placed it in his shirt. She screamed and the three children came into the hall. Defendant then went to the kitchen, and the rest of the family followed. Defendant took a butcher knife out of a drawer. Brissy asked defendant not to kill them. Defendant was angry and pointed the knife at her. Brissy attempted to flee, but defendant blocked the door and stabbed her in the right eye. Brissy tried to grab the knife, but defendant twisted it, cutting her hand. She

released the blade and ran to the garage. Defendant again stated that he was going to kill her. Defendant followed her to the garage and continued to stab her. Nita, Brissy's oldest daughter, attempted to intervene. Nita and Brissy were able to hold defendant down for a few minutes. Brissy then instructed Nita to leave so she would not be harmed. Thereafter, Brissy heard police sirens approaching. She walked out of the garage. She looked back and saw defendant pointing the knife at his stomach. Brissy estimated the stabbing took place over a period of between 15 and 20 minutes. She was taken to the hospital, where she was treated for stab wounds to her face, neck, and hand. Nita testified to a similar series of events.

Defendant did not testify. He interposed an insanity defense and presented only the testimony of Dr. Syed Ali. Additional facts relevant to the two issues raised will be set forth in our discussions of these issues.

## II. ANALYSIS

### A. Violation of This Court's Mandate

Defendant first contends that the trial court exceeded the mandate of this court by allowing the State to reinstate two charges after defendant successfully withdrew his guilty plea. Defendant was originally charged with one count of armed violence, one count of attempted murder, and two counts of aggravated battery. Defendant pleaded guilty to the armed violence count and, in exchange, the State dismissed the remaining counts. Subsequently, defendant moved to withdraw his guilty plea, contending he was taking psychotropic medications at the time his plea was entered and was therefore entitled to a fitness hearing before his plea was accepted. The trial court denied defendant's motion. Defendant appealed and this court reversed. This court's opinion concluded with the following statement:

"For the foregoing reasons, we vacate the defendant's conviction of armed violence and remand the cause to the circuit court of Du Page County for further proceedings to allow the defendant to plead anew to the charge of armed violence." *People v. Abraham*, 293 Ill. App. 3d 801, 806 (1997).

In addition, the mandate issued by this court stated:

"BE IT REMEMBERED, that, to wit: On the 29th day of December, 1997, a Decision of the aforementioned Court was entered of record and in accordance with the views expressed in the attached Decision the judgment of the trial court is Vacated and Remanded."

Following remand, defendant entered a plea of not guilty to the armed violence count. The State then moved to reinstate the counts it had dismissed as part of its agreement with defendant. The trial court

granted the State's motion. Defendant was convicted of attempted murder, aggravated battery, and armed violence. He received a sentence of 20 years' imprisonment on the attempted murder and armed violence counts and a sentence of 5 years' imprisonment on the aggravated battery count. The trial court ordered that the sentences run concurrently.

●1 Defendant now argues that the plain language of the mandate of this court precluded the reinstatement of the aggravated battery or armed violence counts. When a court of review issues a mandate, it vests a trial court with jurisdiction only to take action that conforms with the mandate. *People v. Bosley*, 233 Ill. App. 3d 132, 137 (1992). A trial court has no authority to act beyond the scope of the mandate. *People v. Craig*, 313 Ill. App. 3d 104, 106 (2000). Directions that are precise and unambiguous must be obeyed. *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276 (1982). Where no such directions are given, the trial court must determine from the nature of the case what further proceedings are appropriate. *Pioneer Trust & Savings Bank v. Zonta*, 96 Ill. App. 3d 339, 344 (1981). Issues not actually decided by the reviewing court, as well as those not at issue in the appeal, may be considered following remand. *People ex rel. Bernardi v. City of Highland Park*, 225 Ill. App. 3d 477, 482 (1992). Further, matters that are implied by the mandate are considered embraced by it. *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 308 (1981).

●2 Initially, we note that the "correctness of the trial court's action on remand is to be determined from the appellate court's mandate, as opposed to the appellate court's opinion." *PSL Realty Co.*, 86 Ill. 2d at 308. However, where the mandate directs the trial court to proceed in conformity with the opinion issued, the opinion must be consulted in determining the appropriate course of action. *Bernardi*, 225 Ill. App. 3d at 482. In the present case, the mandate states "in accordance with the views expressed in the attached Decision the judgment of the trial court is Vacated and Remanded." Thus, defendant is correct in relying on the text of the earlier opinion in support of his argument. However, the entire opinion is relevant. *Cf. Bernardi*, 225 Ill. App. 3d at 482 (holding that where instructions are general, "the lower court should examine the opinion and determine what further proceedings would be consistent with the opinion").

●3 We find defendant's attempt to construe the mandate in the present case as precluding the reinstatement of the previously dismissed charges unpersuasive. At its essence, defendant's argument is that the mandate stated only that defendant was to "plead anew to the charge of armed violence." Hence, according to defendant, this act was the only one the trial court was authorized to perform. We refuse

to read this language in such an unnaturally constrained manner for several reasons. First, we note that, considering the opinion as a whole, an ambiguity exists. Prior to concluding, this court stated that "defendant's conviction should be vacated and the cause remanded to allow the defendant to plead anew." *Abraham*, 293 Ill. App. 3d at 805. Only later does the opinion add the language "to the charge of armed violence." Further, the opinion is silent as to whether the State could reinstate the previously dismissed charges. Accordingly, interpretation is required.

Second, the obvious implication of the remand order, given the context in which it was issued, is that the cause would continue in an ordinary manner as if defendant had not originally pleaded guilty. In the usual course of events, the withdrawal of a guilty plea places the parties in the position they occupied prior to the consummation of a plea agreement. See *People v. Bullis*, 85 Ill. App. 3d 693, 695 (1980). In fact, Supreme Court Rule 605(b) recognizes this proposition and requires that a defendant be admonished of this possibility when a guilty plea is entered. 145 Ill. 2d R. 605(b). This proposition also applies following an appeal, as our supreme court noted in the following passage:

> "In short, defendant's first successful appeal of his guilty plea placed him in the position he held prior to the plea or in the position he would have held had he been allowed to withdraw his plea. The appellate court's mandate to plead anew encompassed starting the process over. Accordingly, there was nothing to prevent the State from reinstating the greater charge." *People v. McCutcheon*, 68 Ill. 2d 101, 106 (1977).

Thus, the normal course of events following defendant's withdrawal of his plea would have included the State's ability to reinstate the dismissed counts. In the absence of some statement that this court intended a deviation from this usual practice, we will not read the language relied on by defendant to bar such a result.

Third, the trial court in fact complied with the mandate by allowing defendant to plead anew to the armed violence count. Defendant was entitled to make this decision. However, the decision necessarily had some consequences, the foremost being that the plea agreement he had reached with the State was no longer in effect. See *McCutcheon*, 68 Ill. 2d at 107. That the agreement was annulled in no way contravened the mandate of this court. Quite simply, the trial court followed the mandate of this court, and, as a result, certain events necessarily followed.

Therefore, we conclude that the mandate of this court was ambiguous and required interpretation. Further, the mandate did not

expressly address whether the State would be allowed to reinstate the dismissed counts. The trial court properly interpreted the mandate by construing it in a manner consistent with the usual events that follow the withdrawal of a guilty plea.

Defendant relies on *People v. Craig*, 313 Ill. App. 3d 104 (2000), and *People v. Bosley*, 233 Ill. App. 3d 132 (1992), in support of his argument; however, both cases are distinguishable for similar reasons. In *Craig*, this court vacated the defendant's sentence and remanded the cause for resentencing. On remand, the trial court vacated one of the defendant's convictions. *Bosley* involved a trial court vacating a plea agreement following a remand on a sentencing issue as well. A remand for resentencing does not inherently imply that any proceedings, beyond the resentencing itself, will follow. Conversely, a remand to allow a defendant to enter a new plea to a charge necessarily entails that further proceedings will follow. As noted above, if a plea agreement is in place, such an occurrence generally voids the agreement. See *Bullis*, 85 Ill. App. 3d at 695. Accordingly, neither *Craig* nor *Bosley* provides significant guidance, as they deal with sentencing issues.

Defendant also points out that the State filed a petition for leave to appeal with the supreme court following defendant's first appeal. In this petition, the State requested, *inter alia*, that the supreme court remand the case to this court to allow this court to amend its decision and allow the State to proceed to trial with all counts reinstated. The petition was subsequently denied. Defendant fails to explain the significance of the mere fact that the State made this request. The only legal theory that appears to be possibly applicable is judicial estoppel. However, that doctrine requires, among other things, that the party was successful in asserting the position and received some benefit as a result. *People v. Coffin*, 305 Ill. App. 3d 595, 598 (1999). Since this condition was not met, the doctrine cannot apply.

Finally, we find implausible defendant's suggestion that this court may have intended to prevent the State from reinstating the dismissed charges in order to keep it from punishing defendant for exercising his right to make critical decisions about his case with a sound mind. Restoring the parties to the position they occupied prior to a plea agreement is not punishment. See *People v. Walker*, 113 Ill. App. 3d 1074, 1079 (1983). Rather, defendant was merely denied the benefit of an agreement he no longer wished to abide by.

Accordingly, the trial court's decision allowing the State to reinstate the charges that had previously been dismissed was correct.

## B. Evidence of Other Crimes

Defendant also argues that he was prejudiced by the admission of

testimony concerning several previous incidents of domestic violence that occurred between him and the victim. At trial, the following incidents were introduced through the testimony of Nita and Brissy. On February 12, 1998, defendant and Brissy were arguing. Defendant held a knife to Brissy's throat and threatened to kill her. Nita called the police, and, when they arrived, defendant ceased what he was doing. On August 4, 1990, defendant was intoxicated. He was verbally abusive and stomped on Brissy's foot. Brissy stated that, as a result, her foot was broken and she could not work for one week. On October 14, 1990, defendant was intoxicated and was attempting to kill himself by running the family car in the garage, which was closed. Brissy took the keys from him and went outside, where she hid under a bush. Defendant came out to look for her, and she was able to slip back into the house and hide in the basement. Defendant eventually found her and violently beat her. Nita called the police, and defendant stopped beating Brissy when they arrived. On November 1, 1992, defendant was intoxicated and poured gasoline onto the kitchen and living room floors. Defendant threatened to kill the whole family and burn the house down. Defendant ignited a cloth; however, Brissy and one of her daughters extinguished it. Defendant then lit a shirt and threw it into the garage. The police were summoned. Defendant then placed the gas can he was using in the garage and stopped trying to start the house on fire. On July 4, 1993, Brissy and her children returned from church at approximately 9:30 p.m. and found defendant lying naked on Nita's sister's bed. He was intoxicated. Brissy was initially unable to wake him, so she hit him on his feet with a clothes hanger. He then awoke, pursued her through the house, and beat her. At one point during this attack, defendant struck Brissy in the face with a wooden drawer. Defendant ceased this attack when he heard police sirens approaching.

Prior to trial, defendant moved, *in limine*, to bar the State from introducing evidence of these incidents at trial. In denying defendant's motion, the trial court first noted that the State was required to prove intent and that specific intent to kill is an element of attempted murder. The court observed that anything that tends to negate that the attack was accidental also tends to prove intent, regardless of whether defendant asserts a defense based on accident. Further, the court stated that the prior assaults showed a hostility toward the victim and thus were probative of motive. The court acknowledged that these incidents were prejudicial to defendant but found that their probative value outweighed their prejudicial effect. The court then went on to consider the incidents individually. In the course of addressing the incidents individually, the court noted that the State alleged that, during one of the incidents, defendant struck his daughter and tried to

bite a police officer; the court questioned the relevance of those allegations to defendant's intent regarding his attack on Brissy. The court's ultimate ruling excluded reference to these incidents and limited the State to presenting evidence of prior assaults on Brissy. The court also found that evidence of defendant's violation of rules imposed by DCFS and an order of protection were inadmissible, as their prejudicial effect outweighed their probative value. Finally, the court reserved ruling on defendant's motion to the extent it sought to bar incidents that could be relevant to rebutting defendant's insanity defense.

●4 We find no error in the trial court's ruling. Ordinarily, "[e]vidence of crimes for which a defendant is not on trial is inadmissible if relevant merely to establish his propensity to commit crime." *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991). A danger exists that evidence of other crimes will persuade the jury to convict the defendant because it feels that the defendant is a bad person and deserving punishment. *People v. Lindgren*, 79 Ill. 2d 129, 137 (1980). However, evidence of other crimes may be admitted for another purpose, such as establishing identity, intent, motive, or *modus operandi*, if its probative value is not substantially outweighed by its prejudicial effect. *People v. Richardson*, 123 Ill. 2d 322, 339 (1988). Other crimes need not be identical to the crime charged in order to be admitted; they only need be relevant to some proper purpose. *Richardson*, 123 Ill. 2d at 339. When such evidence is offered to prove intent or the absence of an innocent mental state, a general similarity will suffice. *People v. McKibbins*, 96 Ill. 2d 176, 185-86 (1983). The admission of evidence of other crimes is a matter within the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. *People v. Enis*, 163 Ill. 2d 367, 388 (1994). A trial court abuses its discretion only where its decision is "arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Leon*, 306 Ill. App. 3d 707, 713 (1999).

●5 Many cases have held that prior attacks upon the victim of a crime of which a defendant stands accused are probative of both intent and motive. In *People v. Heard*, 187 Ill. 2d 36, 59 (1999), the defendant's prior assaults on the victims of the crime with which he was charged were "admissible to prove defendant's motive and intent to commit the murders." In *People v. McCarthy*, 132 Ill. 2d 331, 337 (1989), another murder case, the State was permitted to introduce evidence that the defendant had previously broken the windows of a car belonging to a family member of the victim and, on another occasion, struck the victim several times. Our supreme court held that "[t]he testimony regarding the defendant's prior acts of violence toward [the victim] and her family tended to show the defendant's intent to harm

her." *McCarthy*, 132 Ill. 2d at 344. Furthermore, in *People v. Illgen*, 145 Ill. 2d 353, 367 (1991), the supreme court held that "evidence that the defendant physically assaulted his wife throughout their marriage was relevant to show their antagonistic relationship and, thus, tended to establish defendant's motive to kill her." Thus, the principle that prior assaults against a victim of a crime that a defendant is charged with committing is probative of intent or motive is well established. See also *People v. Manzella*, 56 Ill. 2d 187, 196 (1973), *overruled on other grounds by People v. Huckstead*, 91 Ill. 2d 536, 548 (1982). Hence, we find no abuse of discretion in the trial court's ruling that such acts were probative of intent and motive in the present case.

Defendant contends that the probative value of these earlier incidents is suspect because defendant was intoxicated during their commission while he was sober during the present assault. However, where prior assaults are admitted to show intent, a general similarity between them and the charged offense is sufficient. *Illgen* 145 Ill. 2d at 373. In the present case, regardless of whether defendant was intoxicated during the earlier assaults, they do tend to establish a hostility on defendant's part toward the victim. Thus, they are probative of defendant's intent during the incident in which he was alleged to have attempted to kill Brissy as well as his motive to kill her. See *McCarthy*, 132 Ill. 2d at 344.

Defendant also argues that his intent was not seriously at issue during the trial. He points out that he did not claim that the stabbing was done accidentally. Further, according to defendant, his intent was inferable from his actions, and he did not contest the fact that he stabbed Brissy repeatedly. This argument might be persuasive if defendant was merely charged with aggravated battery. However, because defendant was also charged with attempted murder, the State had to prove a specific intent to kill. See *People v. Lopez*, 166 Ill. 2d 441, 445-46 (1995). The trial court recognized this requirement when it made its ruling. We cannot say that the trial court abused its discretion in admitting this evidence in light of the mental state required to prove attempt. In fact, this evidence may have been useful to the jury in distinguishing attempted murder from aggravated battery, with its lower mental state requirement.

Defendant goes on to argue that, because the earlier attacks were all nonfatal, they were not probative of a specific intent to kill. However, as noted above, they were probative of defendant's hostility toward the victim. As such, they were also probative of motive and intent. *Illgen*, 145 Ill. 2d at 366-67. We note that in any murder case prior attacks against the murder victim are necessarily nonfatal yet have been held probative of intent. See *Illgen*, 145 Ill. 2d at 366-67; *McCarthy*, 132 Ill. 2d at 344.

Much of the remainder of defendant's argument on this issue concerns the erroneous admission of this evidence as it related to his insanity defense. However, the trial court clearly based its decision to admit this evidence on its relevance to the issues of intent and motive. Thus, defendant's argument as it relates to his insanity defense is largely beside the point and need not be addressed.

Finally, we cannot conclude that the trial court abused its discretion in determining that the probative value of these acts outweighed their prejudicial effect. The trial judge was in the best position to determine what effect the evidence would have on the jury, and we will not substitute our judgment for his. See *Illgen*, 145 Ill. 2d at 376. As often is the case, reasonable minds could differ regarding the importance of this evidence on the issue of intent and the effect it would have on the jury. Where reasonable minds can differ, no abuse of discretion can exist. See *People v. Leon*, 306 Ill. App. 3d 707, 713 (1999); *Illgen*, 145 Ill. 2d at 376. Moreover, the trial court instructed the jury that the evidence of the earlier assaults could be used only on the issues of intent, motive, knowledge, and sanity. Thus, any prejudice accruing to defendant from the admission of this evidence was substantially reduced. See *Illgen*, 145 Ill. 2d at 376.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON, P.J., and RAPP, J., concur.