(No. 98351.—

PHILIP N. CRUSIUS, Appellant, v. THE ILLINOIS GAMING BOARD *et al.*, Appellees.

*Opinion filed September 22, 2005.*

THOMAS, C.J., and FREEMAN, J., took no part.

Terrance A. Norton, of Sonnenschein, Nath & Rosenthal, L.L.P., and Jay E. Stewart, both of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and Mary E. Welsh, Assistant Attorney General, of Chicago, of counsel), for appellees The Illinois Gaming Board *et al.*

William R. Quinlan, James R. Carroll, James A. Niewiara and Nicholas G. Grapsas, of Quinlan & Carroll, Ltd., of Chicago, for appellee Village of Rosemont.

Joseph U. Schorer, Robert D. Snow, Jr., and Scott M.

Edenfield, of Chicago, and Robert R. Gasaway, Ashley C. Parrish and Sookyoung Shin, of Washington, D.C., all of Kirkland & Ellis, L.L.P., for intervenor-appellee Emerald Casino, Inc.

Gordon B. Nash, Jr., Harold L. Kaplan, Patrick S. Coffey and Jeffrey M. Schwartz, of Gardner, Carton & Douglas, L.L.P., of Chicago, for intervenor-appellee Official Committee of Unsecured Creditors of Emerald Casino, Inc.

JUSTICE GARMAN delivered the opinion of the court:

Plaintiff, Philip N. Crusius (Crusius), filed suit on behalf of all Illinois taxpayers and the State of Illinois against the Illinois Gaming Board (Board), seeking a declaratory judgment that section 11.2(a) of the Riverboat Gambling Act (230 ILCS 10/11.2(a) (West 2000)) violates the Illinois Constitution's special legislation clause (Ill. Const. 1970, art. IV, § 13). The Cook County circuit court dismissed Crusius' action with prejudice and the appellate court affirmed (348 Ill. App. 3d 44). The sole issue before this court is whether section 11.2(a) violates the special legislation clause. We hold it does not and affirm the judgments of the appellate court and the circuit court.

## BACKGROUND

This case arose from the application by Emerald Casino, Inc. (Emerald), to renew its riverboat gambling license and relocate its operations pursuant to section 11.2(a) of the Riverboat Gambling Act (230 ILCS 10/ 11.2(a) (West 2000)). The Act, which took effect in 1990, created the Board to regulate riverboat gambling throughout Illinois (Ill. Rev. Stat. 1991, ch. 120, par. 2405(a)(1)) and authorized the Board to issue up to 10 riverboat gambling licenses (Ill. Rev. Stat. 1991, ch. 120,

par. 2407(e)). Four licenses were to be issued for riverboat gambling on the Mississippi River, one was to be issued for riverboat gambling on the Illinois River south of Marshall County, one was to be issued for riverboat gambling on the Des Plaines River in Will County, and locations for the other four licenses were to be determined by the Board. Ill. Rev. Stat. 1991, ch. 120, par. 2407(e).

In 1992, the Board issued a license to Emerald, then known as H.P., Inc., to operate a riverboat casino on the Mississippi River in East Dubuque, Illinois. Shortly thereafter, Emerald began operating the Silver Eagle Casino. After the initial three-year duration of Emerald's license elapsed, it renewed the license for one year in 1995 and again in 1996. In April 1997, Emerald applied for a third renewal, but the Board denied its application. Emerald and the Village of Rosemont (Rosemont), as defendants in this case, maintain that by early 1997, the East Dubuque site had become economically infeasible, due in part to strong competition from nearby Iowa riverboats. Emerald further asserts that it was seeking to move its operations to a new location away from the Mississippi River at the time it applied to renew its license in 1997.

After the Board denied Emerald's 1997 renewal application, Emerald pursued an administrative appeal of the Board's decision before an administrative law judge (ALJ). In May 1999, the ALJ affirmed the Board's denial of Emerald's application. The ALJ also denied Emerald's two motions for reconsideration.

In July 1997, while Emerald's administrative appeal was pending, Emerald stopped operating its riverboat casino. Emerald maintains that, during the first two years after its casino became nonoperational, it continued to seek the Board's approval to move its business to a new location.

In June 1999, while Emerald's operations lay dor-

mant and before the Board could take final action on the ALJ's May 1999 order, the General Assembly enacted Public Act 91—40. Public Act 91—40 added section 11.2 to the Riverboat Gambling Act, which provides in part that:

> "A licensee that was not conducting riverboat gambling on January 1, 1998 may apply to the Board for renewal and approval of relocation to a new home dock location authorized under Section 3(c) and the Board shall grant the application and approval upon receipt by the licensee of approval from the new municipality or county, as the case may be, in which the licensee wishes to relocate pursuant to Section 7(j)." 230 ILCS 10/11.2(a) (West 2000).

Section 7(j), as amended by Public Act 91—40, authorizes the Board to allow a relocation under section 11.2(a) only if the local governing body approves it by majority vote. 230 ILCS 10/7(j) (West 2002).

In July 1999, Rosemont approved the relocation of Emerald's home dock to the Village of Rosemont. Shortly thereafter, in September 1999, Emerald applied to the Board for renewal of its license and relocation of its operations pursuant to section 11.2(a). The Board denied Emerald's application in January 2001, and in March 2001, it issued Emerald a written notice of denial and a disciplinary complaint seeking to revoke Emerald's license. Among other things, the disciplinary complaint alleges Emerald failed to follow the Board's rules regarding disclosures and transfers of ownership. The license revocation proceedings against Emerald are ongoing as of the date of this decision. *In re* Disciplinary Action of Emerald Casino, Inc., Ill. Gaming Bd., No. DC—01—05.

After the Board denied Emerald's application for renewal and relocation, Emerald filed an action in the Cook County circuit court seeking declaratory relief and a writ of *mandamus* ordering the Board to approve its application. See *Emerald Casino, Inc. v. Illinois Gaming Board*, 346 Ill. App. 3d 18 (2003). The action was com-

menced in May 2001. In cross-motions for summary judgment, Emerald and the Board, through the Attorney General, disputed whether the Board had the discretion to deny Emerald's application when Emerald met the criteria of section 11.2(a). *Emerald Casino*, 346 Ill. App. 3d at 22. The circuit court granted summary judgment in favor of the Board. *Emerald Casino*, 346 Ill. App. 3d at 22.

On appeal, Emerald and Rosemont, which was granted permission to intervene in the lawsuit after the circuit court ruled in favor of the Board (*Emerald Casino*, 346 Ill. App. 3d at 22), argued that the language of section 11.2(a) is mandatory and therefore required the Board to grant Emerald's application (*Emerald Casino*, 346 Ill. App. 3d at 26-27). The appellate court reversed the circuit court's grant of summary judgment. It held the legislature intended "shall" to be mandatory when it enacted section 11.2(a). *Emerald Casino*, 346 Ill. App. 3d at 32. The court reasoned, in part, that a mandatory construction of the statute is consistent with the Act's stated purpose of assisting economic development and promoting tourism, because by requiring the Board to approve Emerald's application for renewal and relocation, the legislature ensured that Emerald's license would be put back to use. See *Emerald Casino*, 346 Ill. App. 3d at 33. Furthermore, the court concluded that even though a mandatory reading of "shall" creates an exception to the license renewal requirements of the Riverboat Gambling Act (230 ILCS 10/7 (West 2000)), the plain language of section 11.2 indicates the legislature's intent to create such an exception. See *Emerald Casino*, 346 Ill. App. 3d at 35-36. The Board in *Emerald Casino* filed a petition for leave to appeal, which was denied. *Emerald Casino, Inc. v. Illinois Gaming Board*, 209 Ill. 2d 579 (table).

In May 2002, while the Emerald Casino action was

still pending, Illinois citizen and taxpayer Philip N. Crusius filed the lawsuit that is the subject of this appeal in the Cook County circuit court on behalf of all Illinois taxpayers and the State of Illinois. The Board, its individual board members, the State Comptroller, and the State Treasurer were named as defendants. Crusius sought a declaratory judgment that section 11.2(a) violates the Illinois Constitution's special legislation clause.[1] He also sought to enjoin the expenditure of any

---

[1]A special legislation challenge to section 11.2 was also raised in *Lake County Riverboat, L.P. v. Illinois Gaming Board*, 332 Ill. App. 3d 127 (2002). The appeal in that case was pending at the time Crusius filed his lawsuit. *Lake County Riverboat* arose as the result of Lake County's interest in obtaining a license to operate a riverboat casino on the Fox River in Lake County. In 1997, while the ALJ was reviewing the Board's order denying Emerald's application for license renewal, Lake County filed its own application for a license under the assumptions that Emerald would lose its license, and the former Emerald license could be reissued as a new license for use on the Fox River. *Lake County Riverboat*, 332 Ill. App. 3d at 130. The Board denied Lake County's application, but did so in a way that left open the possibility it would consider the application if Emerald lost its license. Specifically, the Board denied the application " 'without prejudicing the applicant' " and noted that no judgment was being made on the application's substantive merits. *Lake County Riverboat*, 332 Ill. App. 3d at 130. After the legislature enacted section 11.2, Lake County filed a lawsuit challenging the statute's constitutionality. *Lake County Riverboat*, 332 Ill. App. 3d at 131. The circuit court dismissed the suit on the ground Lake County lacked standing. *Lake County Riverboat*, 332 Ill. App. 3d at 131. The appellate court affirmed. It held that the Riverboat Gambling Act does not give the Board discretion to issue any of the six licenses whose locations are fixed by the Act away from their statutorily designated navigable streams, even where a license is revoked or terminated and reissued to a new licensee. *Lake County Riverboat*, 332 Ill. App. 3d at 140. Therefore, Lake County, which would not have been able to obtain Emerald's license for use on the Fox River, had no standing to challenge the constitutionality of section 11.2. *Lake County Riverboat*, 332 Ill. App. 3d at 140. Because Lake County had no standing, the special legislation issue was not addressed on the merits.

state funds or the transfer of any state property in the administration of Public Act 91—40, which contains section 11.2(a).

Crusius filed a motion for summary judgment on the special legislation issue (735 ILCS 5/2—1005 (West 2000)). The Board, through the Attorney General, filed a combined motion to dismiss (735 ILCS 5/2—619.1 (West 2000)), arguing that Crusius lacked standing to file suit (735 ILCS 5/2—619 (West 2000)) and that he failed to state a cause of action (735 ILCS 5/2—615 (West 2000)). Subsequently, the circuit court granted Rosemont leave to intervene as a defendant (735 ILCS 5/2—408 (West 2000)), and it too filed a combined motion to dismiss. In an oral ruling, the circuit court found that Crusius had standing to bring the action, but that section 11.2(a) is constitutional. Accordingly, it dismissed Crusius' complaint with prejudice for failure to state a cause of action.

The appellate court affirmed. 348 Ill. App. 3d 44. Initially, it upheld the circuit's court's decision on standing (348 Ill. App. 3d at 48-53), which is not at issue in this appeal. The court also held that section 11.2(a) does not constitute special legislation. 348 Ill. App. 3d at 56. The statute, the court noted, permits the only nonoperational riverboat gambling licensee in the state to request relocation to an economically viable site. 348 Ill. App. 3d at 56. Prior to the enactment of section 11.2(a), the Riverboat Gambling Act's stated purpose of assisting economic development and promoting tourism was frustrated, because a licensee operating at a site that was economically nonviable had no means of relocating to a site where it could generate economic benefits for the state. 348 Ill. App. 3d at 56. In light of these considerations, the court concluded that the distinction the legislature drew in section 11.2(a) between a licensee at a nonviable location and licensees at viable locations is not arbitrarily narrow and does not benefit a particular group without a reasonable basis. 348 Ill. App. 3d at 56.

We granted Crusius leave to appeal pursuant to Supreme Court Rule 315. 177 Ill. 2d R. 315. Afterward, we allowed Emerald and The Official Committee of Unsecured Creditors of Emerald Casino, Inc. (Committee),[2] to intervene in the lawsuit as appellees. We also allowed the state defendants, through the Attorney General, to realign with Crusius as appellants.

## ANALYSIS

In general, statutes carry a strong presumption of constitutionality, and the party challenging a statute has the burden of rebutting the presumption. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146 (2003). This court has a duty to uphold the constitutionality of a statute if it is reasonably possible to do so. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 122 (2004). We review *de novo* the circuit court's determination of section 11.2(a)'s constitutionality (*Arvia v. Madigan*, 209 Ill. 2d 520, 536 (2004)), and its consequent order granting the section 2—615 motions to dismiss Crusius' complaint (*Neade v. Portes*, 193 Ill. 2d 433, 439 (2000)).

### I

Section 13 of article IV of the Illinois Constitution provides:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

---

[2]In September 2002, during the pendency of this case, bankruptcy proceedings were instituted against Emerald in the United States Bankruptcy Court for the Northern District of Illinois. *In re Emerald Casino, Inc.*, No. 02 B 229 (Bankr. N.D. Ill.). Rosemont informs us that in July 2004, the bankruptcy court entered an order confirming Emerald's reorganization pursuant to chapter 11 of the United States Bankruptcy Code. Emerald's bankruptcy proceedings have no bearing on the issue before this court.

The special legislation clause prohibits the General Assembly from conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated. *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 21 (2003), citing *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 391 (1997). While the legislature has broad discretion to make statutory classifications, the special legislation clause prevents it from making classifications that arbitrarily discriminate in favor of a select group. *In re Estate of Jolliff*, 199 Ill. 2d 510, 519 (2002). Our inquiry into special legislation issues is thus twofold. We must determine whether the statutory classification at issue discriminates in favor of a select group and, if so, whether the classification is arbitrary. *Allen*, 208 Ill. 2d at 22, citing *Jolliff*, 199 Ill. 2d at 519.

A special legislation challenge is generally judged under the same standards applicable to an equal protection challenge. *Miller v. Rosenberg*, 196 Ill. 2d 50, 59 (2001). Where, as here, the statute under consideration does not affect a fundamental right or involve a suspect classification, we review it under the deferential rational basis test. *Allen*, 208 Ill. 2d at 22; *Jolliff*, 199 Ill. 2d at 520. Under this test, the statute is constitutional if the classification it establishes is rationally related to a legitimate state interest. *Allen*, 208 Ill. 2d at 22; *Jolliff*, 199 Ill. 2d at 520. If this court can reasonably conceive of any set of facts that justifies distinguishing the class the statute benefits from the class outside its scope, it will uphold the statute. *Jolliff*, 199 Ill. 2d at 520; *Miller*, 196 Ill. 2d at 58.

## II

It is clear section 11.2(a) discriminates in favor of a select group. The statute distinguishes between licensees that were "not conducting riverboat gambling on January 1, 1998" (230 ILCS 10/11.2(a) (West 2000)) and those that were, and it confers a benefit on the former that is

326

unavailable to the latter. The specific nature of this benefit was at issue in *Emerald Casino*, where the appellate court held that section 11.2(a) is mandatory, not permissive, and therefore requires the Board to grant an application for renewal and relocation submitted pursuant to the statute. See *Emerald Casino*, 346 Ill. App. 3d at 26-27, 32. For purposes of this appeal, the parties have accepted the *Emerald Casino* court's interpretation of section 11.2(a). It is not at issue before this court.

Just as it is clear section 11.2(a) discriminates in favor of a select group, it is clear Emerald is the only riverboat gambling licensee that falls within that group. Of the 10 current licensees, only Emerald qualifies under section 11.2(a) as "[a] licensee that was not conducting riverboat gambling on January 1, 1998" (230 ILCS 10/ 11.2(a) (West 2000)). By that date, Emerald had ceased operating its riverboat casino at the East Dubuque site.

### III

The main point of contention in this case is whether the classification section 11.2(a) establishes is rationally related to a legitimate state interest. As plaintiffs' briefs clarify, they do not argue that the fact only Emerald benefits from section 11.2(a) renders the statute irrational. Rather, the gravamen of their argument is that section 11.2(a) undermines the Riverboat Gambling Act's goal of maintaining public confidence in the riverboat gambling industry and its regulation. See 230 ILCS 10/ 2(b) (West 2000). Specifically, plaintiffs note the Board has expressed its concern with Emerald's suitability as a licensee by denying its application for license renewal on two occasions and by initiating license revocation proceedings against it. Yet, despite the Board's statutory obligation to regulate Emerald's licensing (230 ILCS 10/ 7(g) (West 2002)), its reservations about Emerald's suitability as a licensee, and the Act's limitations on suitable riverboat gambling locations (230 ILCS 10/7(e) (West

2002)), section 11.2(a) requires the Board to allow Emerald to renew its license and relocate its gambling operations.

In response, defendants argue that section 11.2(a) furthers the Riverboat Gambling Act's goals of assisting economic development, promoting tourism, and generating revenue for education. See 230 ILCS 10/2(a) (West 2004). Emerald, they point out, was the only licensee whose operations were dormant when the General Assembly enacted section 11.2(a). Therefore, it was rational for the General Assembly to allow Emerald to renew its license and establish gambling operations at a different, more lucrative site, where it might again generate economic benefits for the state.

We agree with defendants that section 11.2(a) is rationally related to the Riverboat Gambling Act's economic goals. Section 2(a) of the Act now states:

"This Act is intended to benefit the people of the State of Illinois by assisting economic development and promoting Illinois tourism and by increasing the amount of revenues available to the State to assist and support education." 230 ILCS 10/2(a) (West 2004).

The General Assembly thus intended that the Act achieve the economic goals of assisting development, promoting tourism, and generating revenue for education.

At the time section 11.2(a) was enacted, Emerald was the only riverboat gambling licensee in the state whose operations were dormant. It was rational for the legislature to conclude that recommencing Emerald's operations would promote the economic goals of the Riverboat Gambling Act. Likewise, it was rational for the legislature to focus its attention solely on Emerald, as Emerald was the only nonoperational licensee.

In addition, the specific means the legislature chose to revive Emerald's gambling operations possess a rational basis. Section 11.2(a) allows Emerald to have its license renewed and to relocate its operations to a differ-

ent site. Prior to the enactment of section 11.2(a), the Riverboat Gambling Act contained no provision enabling a licensee having financial difficulties to relocate its operations. See 230 ILCS 10/1 *et seq.* (West 1998). The legislature could rationally have determined that Emerald's business would fare better if Emerald were given the opportunity to operate somewhere other than the East Dubuque site, which had proved to be economically unviable, due in part, perhaps, to competition from nearby Iowa riverboats. Having made such a determination, and recognizing Emerald's license had not been renewed in 1997, the legislature could rationally have concluded that Emerald's automatic and immediate relicensure would best ensure its prompt relocation.

## IV

Plaintiffs assert, however, that the Riverboat Gambling Act's economic goals and its regulatory goal are inextricably linked, and that the former cannot be achieved at the expense of the latter, which, as mentioned, they maintain is undermined by section 11.2(a)'s circumvention of the Board's regulatory authority. In support of this contention, plaintiffs point to the language of section 2(b) of the Riverboat Gambling Act stating that riverboat gambling will enhance investment, development, and tourism in Illinois successfully "only if" public confidence is maintained in the riverboat gambling industry and its regulation (230 ILCS 10/2(b) (West 2000)). Plaintiffs misconstrue section 2(b).

The best evidence of legislative intent is the language of the statute, and that language must be given its plain and ordinary meaning. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005). Section 2(b) of the Act, which immediately follows the Act's statement of its economic goals, provides:

"While authorization of riverboat gambling will enhance investment, development and tourism in Illinois, it is

recognized that it will do so successfully only if public confidence and trust in the credibility and integrity of the gambling operations and the regulatory process is maintained. Therefore, regulatory provisions of this Act are designed to strictly regulate the facilities, persons, associations and practices related to gambling operations pursuant to the police powers of the State, including comprehensive law enforcement supervision." 230 ILCS 10/2(b) (West 2000).

The first sentence of section 2(b) is hortatory. See, *e.g.*, *Schoeberlein v. Purdue University*, 129 Ill. 2d 372, 379 (1989) (interpreting section 12 of article I of the Illinois Constitution, which provides that " '[e]very person shall find a certain remedy *** for all injuries and wrongs' " as merely expressing a philosophy, not mandating a certain remedy to be provided in any specific form, and describing the provision as "aspirational"), citing *Sullivan v. Midlothian Park District*, 51 Ill. 2d 274, 277-78 (1972). It simply takes notice of the general importance of maintaining the public's confidence in the riverboat gambling industry, as evinced by the legislature's use of the phrase "it is recognized" (230 ILCS 10/2(b) (West 2000)). This recognition does not indicate an intent to expressly condition the achievement of the Act's economic goals on the maintenance of public confidence. The second sentence of section 2(b) actually articulates the Act's regulatory goal, stating that the Act's regulatory provisions are "designed to strictly regulate the facilities, persons, associations and practices related to gambling operations" (230 ILCS 10/2(b) (West 2000)). The Act's goal of strict regulation is thus stated independently of the Act's economic goals.

Legislation often has multiple purposes whose furtherance involves balancing and compromise by the legislature. For a provision in a law to pass the rational basis test, it does not have to promote all of the law's disparate and potentially conflicting objectives. The United States Supreme Court's recent decision in *Fitzger-*

*ald v. Racing Ass'n of Central Iowa*, 539 U.S. 103, 156 L. Ed. 2d 97, 123 S. Ct. 2156 (2003), is instructive in this regard.

*Fitzgerald* involved an equal protection challenge to a provision of Iowa's state code governing the taxation of revenues from slot machines at racetracks. See *Fitzgerald*, 539 U.S. at 105-06, 156 L. Ed. 2d at 102, 123 S. Ct. at 2158. A 1989 Iowa law authorized slot machine gambling on riverboats and imposed a graduated tax on riverboat slot machine revenues. *Fitzgerald*, 539 U.S. at 105, 156 L. Ed. 2d at 101-02, 123 S. Ct. at 2158. In 1994, Iowa enacted legislation that, among other things, authorized slot machine gambling at racetracks and imposed a graduated tax on racetrack slot machine revenues. *Fitzgerald*, 539 U.S. at 105, 156 L. Ed. 2d at 102, 123 S. Ct. at 2158. The 1994 legislation did not alter the maximum rate of the graduated tax on riverboat slot machine revenues, and as a result, riverboat slot machine revenues became subject to a lower tax than racetrack slot machine revenues. *Fitzgerald*, 539 U.S. at 105, 156 L. Ed. 2d at 102, 123 S. Ct. at 2158. The plaintiffs in *Fitzgerald*, a group of racetracks and an association of dog owners, filed a lawsuit challenging the 1994 legislation on the ground the tax differential it created violated the equal protection clause of the United States Constitution. *Fitzgerald*, 539 U.S. at 105-06, 156 L. Ed. 2d at 102, 123 S. Ct. at 2158. The Iowa Supreme Court held the equal protection clause prohibited imposition of different tax rates on the riverboat and racetrack slot machine revenues, reasoning that the tax differential defeated the 1994 legislation's purpose of helping racetracks recover from economic distress. *Fitzgerald*, 539 U.S. at 106, 156 L. Ed. 2d at 102, 123 S. Ct. at 2158.

The United States Supreme Court reversed, holding the differential tax rate did not violate the equal protection clause. *Fitzgerald*, 539 U.S. at 110, 156 L. Ed. 2d at

105, 123 S. Ct. at 2161. In doing so, the Court criticized the reasoning of the Iowa Supreme Court on three main grounds. First, it noted that the 1994 legislation, like most laws, could "predominately serve one general objective," such as helping the racetracks, while containing other provisions intended to accomplish other—perhaps even contrary—ends, "thereby producing a law that balances objectives but still serves the general objective when seen as a whole." *Fitzgerald*, 539 U.S. at 108, 156 L. Ed. 2d at 103, 123 S. Ct. at 2159. Second, the Court pointed out that the 1994 legislation, seen as a whole, could rationally be understood to advance the economic interests of Iowa's racetracks. *Fitzgerald*, 539 U.S. at 108, 156 L. Ed. 2d at 103, 123 S. Ct. at 2160. According to the Court, a rational legislator could have believed that the 1994 legislation's grant to racetracks of the authority to operate slot machines would help the racetracks economically to some degree, even if the legislation's simultaneous taxation of slot machine revenue provided less help to racetracks than the plaintiffs might have preferred. *Fitzgerald*, 539 U.S. at 109, 156 L. Ed. 2d at 104, 123 S. Ct. at 2160. Third, and most notably, the Court emphasized that "[o]nce one realizes that not every provision in a law must share a single objective, one has no difficulty finding the necessary rational support" for the tax differential at issue. *Fitzgerald*, 539 U.S. at 109, 156 L. Ed. 2d at 104, 123 S. Ct. at 2160. A rational legislator, the Court reasoned, could have concluded that the tax differential, while harmful to racetracks, would promote any number of other legitimate ends, including, for instance, the general financial well-being of riverboats, the economic development of river communities, or the promotion of riverboat history. *Fitzgerald*, 539 U.S. at 109, 156 L. Ed. 2d at 104, 123 S. Ct. at 2160.

*Fitzgerald*'s recognition of the principle that, for

purposes of rational basis review, not every provision in a law must share a single objective has an obvious corollary that is directly applicable to this case: not every provision in a law must promote all of the law's objectives. In enacting section 11.2(a), it was rational for the legislature to focus primarily on the economic goals of the Riverboat Gambling Act. As this court has noted on more than one occasion, "[w]hether a statute is wise or whether it is the best means to achieve the desired result are matters left to the legislature, not the courts." *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003), citing *People v. Shephard*, 152 Ill. 2d 489, 503 (1992). It is not our place to second-guess the wisdom of a statute that is rationally related to a legitimate state interest, contentious though that statute may be. "It is the dominion of the legislature to enact laws and it is the province of the courts to construe those laws." *Shields v. Judges' Retirement System*, 204 Ill. 2d 488, 497 (2003).

We further note that section 11.2(a) does not undermine the Riverboat Gambling Act's goal of strict regulation simply because it requires the Board to grant Emerald's application for renewal and relocation. As mentioned, the Act contained no provisions regarding relocation prior to the enactment of section 11.2(a).[3]

---

[3]While this case was pending, the General Assembly amended the Riverboat Gambling Act to provide that "[i]f an owners license terminates or expires without renewal or the Board revokes or determines not to renew an owners license (including, without limitation, an owners license for a licensee that was not conducting riverboat gambling operations on January 1, 1998)" the Board may reissue the license through a competitive bidding process. 230 ILCS 10/7.1(a) (West 2004). The bidder to whom the license is reissued may apply to the Board for relocation of the license to a new home dock. 230 ILCS 10/7.1(c) (West 2004). Amended section 7.5 governs the bidding process. 230 ILCS 10/7.5 (West 2004). These amendments became effective in June 2003. They are, however, not at issue in this case. Accordingly, we express no opinion on them.

Therefore, the amendment of the Act to allow for relocation did not diminish the regulatory authority of the Board in any way. As for license renewal, it is only one facet of the Board's regulatory authority. If any riverboat gambling licensee, including Emerald, fails to comply with the Act's requirements, the Board has the authority to investigate and take appropriate disciplinary action. 230 ILCS 10/5(c)(5) (West 2000). The Act's license revocation provision still applies to Emerald with full force (230 ILCS 10/5(c)(15) (West 2000)), and revocation proceedings have, in fact, been initiated against it. Thus, regardless of Emerald's eligibility for license renewal and relocation under section 11.2(a), if Emerald has failed to comply with the requirements of the Act, it could lose its riverboat gambling license in accordance with the Act's provisions, as is the case with any other licensee.

## CONCLUSION

For the reasons stated above, we hold section 11.2(a) does not violate the Illinois Constitution's special legislation clause. Therefore, Crusius failed to state a cause of action. Accordingly, we affirm the judgment of the appellate court, which upheld the circuit court's dismissal of Crusius' complaint.

*Appellate court judgment affirmed.*

CHIEF JUSTICE THOMAS and JUSTICE FREEMAN took no part in the consideration or decision of this case.