SECOND DIVISION
June 13, 2006

Nos. 1-05-2319 and 1-05-2542, Consolidated

| | | |
|---|---|---|
| EMERALD CASINO, INC., formerly known as HP, INC., an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|     Plaintiff-Appellant, | ) ) | |
|        v. | ) ) | |
| ILLINOIS GAMING BOARD; GREGORY C. JONES; ELZIE HIGGINBOTTOM, ROBERT A. MARIANO; IRA ROGAL and TOBIAS G. BARRY, in their capacity as Members of the Illinois Gaming Board, | ) ) ) ) ) ) | |
|     Defendants-Appellees. | ) | |
| ------------------------------------------ | ) | |
| VILLAGE OF ROSEMONT, ILLINOIS, an Illinois municipal corporation, | ) ) | Honorable |
| | ) | Sophia H. Hall, |
|     Intervenor. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

In December 2003, we held section 11.2(a) of the Illinois Riverboat Gambling Act (Act) (230 ILCS 10/11.2(a) (West 2002)) required the Illinois Gaming Board (Board) to grant Emerald Casino's September 24, 1999, application to renew its license and relocate its gambling business to Rosemont. Reversing the trial court, we remanded with instructions to enter summary judgment for Emerald and Rosemont in their declaratory judgment and mandamus actions, and, we said, "proceed in accordance with this opinion." Emerald Casino, Inc. v. Illinois Gaming Board, 346

Ill. App. 3d 18, 803 N.E.2d 914 (2003).  Our mandate issued July 7, 2004.  Emerald does not have a license.

The question in this case is whether the trial court enforced the mandate we issued.  It did not.

In our opinion we said:

> "One obvious purpose of the amendment was to resurrect the tenth license after nearly two years of inactivity, to begin producing much-needed revenue for the State, as well as meeting the Act's stated purpose of 'assisting economic development and promoting Illinois tourism.' "  Emerald, 346 Ill. App. 3d at 33.

And we said:

> "We believe that when the legislature chose to enact a statute that applied only to Emerald it thought it was providing a remedy for a moribund license, not creating yet another round of delay and rejection."
> Emerald, 346 Ill. App. 3d at 33.

And, quoting from Fumarolo v. Chicago Board of Education, 142 Ill. 2d 54, 97, 566 N.E.2d 1283 (1990)--"We will not assume that the legislature engaged in a meaningless act"--we said: "Neither will we."  Emerald, 346 Ill. App. 3d at 33.

And, discussing the legislature's knowledge of Emerald's history as a licensee and its purpose in enacting section 11.2(a), we said: "It was time to put the license to work." Emerald, 346 Ill. App. 3d at 34.

On remand, in an Order dated June 9, 2005, the trial court directed the Board "to grant Emerald's September 24, 1999 Application for Renewal and Relocation under Section 11.2 of the Illinois Riverboat Gambling Act upon receiving notice of this Order."

Twenty days later, on June 29, the Board passed the Resolution that is at the heart of this case:

> "BE IT RESOLVED that in accordance with the June 9, 2005 order entered by the Circuit Court, the Gaming Board hereby grants Emerald's September 24, 1999 Application For Renewal of Owner's License, as of September 24, 1999, for a period of 4 years, subject to Section 11.2 of the Act being determined constitutional in Crusius." (Emphasis added.)

(The Act was determined constitutional in Crusius. Crusius v. Illinois Gaming Board, 216 Ill. 2d 315, 333, 837 N.E.2d 88 (2005).)

According to the Board's Resolution, Emerald's license expired on September 24, 2003--three months before we issued our opinion in Emerald, five months before we denied the Board's petition for rehearing, eight months before the Illinois Supreme Court denied the Board's Petition For Leave to Appeal, nine months before the Illinois Supreme Court refused to reconsider its denial of the Board's Petition For Leave to Appeal, and 20 months before the trial court told the Board to grant Emerald's application.

In short, not only was the license "moribund," as we characterized it in Emerald, 346 Ill. App. 3d at 33, it had expired, literally. Once again, the legislature's clear directive had been frustrated and ignored. The "round of delay and rejection" we cautioned against had begun. Emerald, 346 Ill. App. 3d at 33. Legislative action was rendered meaningless.

Emerald and Rosemont went back to court. Emerald asked that the Board be held in contempt and Rosemont asked that the Board be compelled to comply with this court's order. The trial court denied the motions, finding that the Board's Resolution "is not precluded" by the language of our opinion. It is.

We reject the notion that this court is in the business of making empty and useless gestures. We believe the only reasonable reading of our opinion requires that the plaintiffs

4

obtain meaningful relief; that is, a license that can be used, that will be "put to work." Emerald, 346 Ill. App. 3d at 34.

Any lingering doubts about the correctness of our position on the legislative purpose behind section 11.2(a) were removed by the supreme court in Crusius. The court observed the legislature was trying to revive Emerald's economic fortunes,

> "and recognizing Emerald's license had not been renewed in 1997, the legislature could rationally have concluded that Emerald's automatic and immediate relicensure would best ensure its prompt relocation." (Emphasis added.) Crusius, 216 Ill. 2d at 328.

The supreme court rejected the Attorney General's claim that section 11.2(a) "undermines the Riverboat Gambling Act's goal of maintaining public confidence in the riverboat gambling industry and its regulation." Crusius, 216 Ill. 2d at 326. Instead, the court held it was rational for the "legislature to conclude that recommencing Emerald's operations would promote the economic goals" of the Act, including "increasing the amount of revenues available to the State to assist and support education." (Emphasis added.) Crusius, 216 Ill. 2d at 327.

The supreme court's choice of words--"automatic,"

"immediate," "prompt," "recommencing"--does not suggest the court was referring to a license that would be dead on arrival.

The Board tells us it cannot understand why Emerald is contending that if the June 29 Resolution is correct the license would have no practical effect. The Resolution, says the Board, left Emerald free to make a timely request for further renewal of its license. See 5 ILCS 100/10-65(b) (West 2004). Therefore, the June 29 Resolution, if valid, does not render the Emerald decision moot. The trial court agreed with that analysis.

We set aside the fact that the Board waited 17 months before issuing a written denial of Emerald's September 24, 1999, application. The problem with the Board's section 10-65(b) argument is that it is beside the point. The Board constructs a straw man. The issue in this case has nothing to do with Emerald's right to file another application. We do not say our decision was rendered moot in a legal sense; it simply was rendered pointless in a realistic sense. By ignoring the plain words of our mandate the Board and the trial court thwarted the will of the legislature that enacted section 11.2(a).

The Board correctly observes Emerald and Rosemont did not ask us to order an effective date for the new license. It is equally true that the Board never suggested it intended to issue a license that could not be used. It did not suggest that a

6

decision in favor of Emerald and Rosemont well might be meaningless. That is not the case we thought we were deciding.

We cannot know whether any of the parties or their lawyers ever considered the Board would issue a license that had expired before our case was decided; in fact, expired before we heard oral arguments in this case.

We do know that in the Emerald bankruptcy proceedings, during 2004, the Board was taking part in the process that would auction off Emerald's license interests. In fact, the Board agreed to hold off revocation proceedings while negotiations were conducted. That does not seem consistent with the Board's current view that the license had no pulse as of September 24, 2003. There may have been changes in Board membership, but it was the same Board.

The Board has two backup positions. It relies on section 7(g), as it was before and after amendment in 1999.

Before section 11.2(a) was enacted, section 7(g) read:

> "Upon the termination, expiration, or
> revocation of each of the first 10 licenses,
> which shall be issued for a 3 year period,
> all licenses are renewable annually upon
> payment of the fee and a determination by the
> Board that the licensee continues to meet all

of the requirements of this Act and the

Board's rules."

A last sentence was added to section 7(g) at the same time section 11.2(a) was enacted:

"However, for licenses renewed on or after May 1, 1998, renewal shall be for a period of 4 years, unless the Board sets a shorter period."

First, the Board contends the pre-amendment section 7(g) means the term of an annual license renewal had to begin at the end of the preceding term. In Emerald's case, that would be sometime in mid-1997. Of course, that reading would vitiate section 11.2(a) and stand our opinion in Emerald on its head. In addition, the Board would have violated the rule, since it set the license renewal date at September 24, 1999--two years after the original license expired. We reject the Board's contention without further discussion.

The Board's second backup position recognizes the possibility that it might be required to issue a license to Emerald that is effective on a date after this opinion. In that case, says the Board, it should be allowed to exercise its discretion to shorten the term of the license from four years. Presumably, the Board has a much shorter term in mind.

In fact, on June 29, the Board set the term of Emerald's

8

license to renew and relocate--four years.  It obviously rejected the time period it now claims was authorized by the pre-amendment section 7(g).  It chose the four-year period contained in the added sentence.  We see no reason to revisit that time period.

In addition, we do not believe the legislature intended the last sentence of amended section 7(g) to apply to section 11.2(a).  The 1999 amendment that applied only to Emerald contains something new--relocation.  That is, "the Act contained no provisions regarding relocation prior to the enactment of section 11.2(a)."  Crusius, 216 Ill. 2d at 332.  Section 7(g) still does not use the word "relocation."  And, as the court held in Crusius, section 11.2(a) was intended to apply only to Emerald.  Crusius, 216 Ill. 2d at 326-27.

Relocation, whatever it entails, cannot be a simple matter.  We cannot envision the legislature requiring renewal and relocation of Emerald's license while authorizing the Board to reduce the term of the license to a duration where it would be useless.  We decline the Board's invitation to authorize it to reconsider the term of the license.

We stress that our only intent is to address the question of whether our mandate has been enforced.  Nothing else.  Whether Emerald and Rosemont possess sufficient moral fiber to conduct and host a gambling business is not now our concern.  We said

9

before and we say again: "Nothing in section 11.2(a) prevents the Board from moving to revoke Emerald's license." Emerald, 346 Ill. App. 3d at 34. The supreme court said it, too:

> "The Act's license revocation provision still applies to Emerald with full force (230 ILCS 10/5(c)(15) (West 2000)), and revocation proceedings have, in fact, been initiated against it." Crusius, 216 Ill. 2d at 333.

All parties agree the trial court is bound by this court's mandate. See Fidelity & Casualty Co. of New York v. Mobay Chemical Corp., 252 Ill. App. 3d 992, 997, 625 N.E.2d 151 (1992). Where a trial court is told to proceed in conformity with the reviewing court's mandate, the trial court should consult the opinion to determine what the mandate requires. PSL Realty Co. v. Granite Investment Co., 86 Ill. 2d 291, 308, 427 N.E.2d 563 (1981); People v. Abraham, 324 Ill. App. 3d 26, 30, 753 N.E.2d 1219 (2001); Harris Trust & Savings Bank v. Otis Elevator Co., 297 Ill. App. 3d 383, 387, 696 N.E.2d 697 (1998).

Whether the trial judge complied with the mandate is a matter of law, subject to de novo review. Clemons v. Mechanical Devices Co., 202 Ill. 2d 344, 352, 781 N.E.2d 1072 (2002).

In Emerald, we remanded this case to the trial court with instructions to enter summary judgment in favor of Emerald and

Rosemont "and proceed in accordance with this opinion."  We thought our opinion was clear: section 11.2(a) was intended to "resurrect the tenth license after nearly two years of inactivity***"  Emerald, 346 Ill. App. 3d at 33.  The legislature did not intend to create "yet another round of delay and rejection."  Emerald, 346 Ill. App. 3d at 33.  It did not intend "a meaningless act."  Emerald, 346 Ill. App. 3d at 33.

Apparently, we were not as clear as we should have been.  We now correct any confusion that might exist and we caution against placing artifice over responsibility.  While we see no point in pursuing contempt proceedings at this time, we direct that immediately on receipt of our mandate the trial court shall order the Board to issue Emerald's license for renewal and relocation within 30 days of the receipt of the trial court's order.  The license shall be effective as of the date of the issuance and shall remain in effect for four years, subject to revocation proceedings.  The trial court shall use its inherent powers to enforce orders to ensure that this order is enforced.

Reversed and remanded with directions.

GARCIA, P.J., and SOUTH, J., concur.